# UNITED STATES BANKRUPTCY COURT
## NORTHER DISTRICT OF OHIO
## EASTERN DIVISION

FILED
U.S. BANKRUPTCY COURT

2019 JUN 14  PM 2:40

NORTHERN DISTRICT OF OHIO
YOUNGSTOWN

In re:                          )
                                )
                                )        Case No.: 19-40227
**Ronald Joseph Smith**         )
                                )
**Debtor**                      )
                                )
                                )        Chapter 13
                                )
                                )
                                )        **Judge Russ Kendig**
                                )
                                )
                                )
                                )
                                )

---

# DEBTOR'S MOTION TO ALTER OR AMENDMENT JUDGMENT

---

Debtor Ronald J. Smith hereby moves this Honorable Court, pursuant to Rule 59(e) of the

Federal Rules of Civil Procedure (Rule 9023 of the Fed. Bankruptcy Code), to alter or amend its

judgment entered on June 5, 2019.

An accompanying Memorandum in support is attached.

Respectfully submitted,

Ronald J Smith, *Pro Se*
1625 Gully Top Lane
Canfield, OH  44406
Ronald1625@hotmail.com
330-207-0705

1

## Certificate of Service

I certify that a copy of the foregoing was served by First Class U.S. Mail on June 14, 2019 upon:

Stephen R. Franks (0075345)
Manley Deas Kochalski LLC
P.O. Box 165028
Columbus, OH 43216-5028
614-220-5611
Attorney for Movant

Ronald J. Smith
Pro se

2

## UNITED STATES BANKRUPTCY COURT
## NORTHER DISTRICT OF OHIO
## EASTERN DIVISION

In re:                          )
                                )
                                )        Case No.: 19-40227
    **Ronald Joseph Smith**          )
                                )
    **Debtor**                      )
                                )        Chapter 13
                                )
                                )
                                )        **Judge Russ Kendig**
                                )
                                )
                                )
                                )
                                )

---

# DEBTOR'S MEMORANDUM TO ALTER OR AMENDMENT JUDGMENT

---

    Debtor Ronald J. Smith request that this Honorable Court, pursuant to Rule 59(e) of the

Federal Rules of Civil Procedure (Rule 9023 of the Fed. Bankruptcy Code), to alter or amend its

judgment entered on June 5, 2019, and submits the following in support:

    The Court's decision to vacate its previous order to dismiss the Debtor's Chapter 13 case

is predicated upon a series of errors of law and mistakes of facts that if allowed to stand, will

lead to 'manifest injustice' in this case.

**Standard of Relief under Rule 59(e)**

    A Motion to reconsider under Rule 59(e) should be granted to correct "(1) a clear error of

law; (2) newly discovered evidence; (3) an intervening change in controlling law; or (4) a need to

prevent manifest injustice." See *FDIC v. Commonwealth Land Title Ins. Co.*, 2013 WL 5215884,

at *1 (N.D. Ohio Sept 13, 2013) (citing *Intera Corp. v. Henderson*, 428 F.3d 606, 620 (6th Cir. 2005).

This request specifically is being made under sections (1) a clear error of law and (4) a need to prevent manifest injustice.

### 1. The Court Errored When it Failed to Establish the Standing of the Movant in This Court

It appears from reading the June 5, 2019 Order of this Court that confusion and misunderstanding exists on multiple issues of facts and law, which is understandable given the 15-year long history of this case,

As a result of that confusion, it appears the Court misapprehended the Debtor's position that the Movant did not have standing in this Court to file the motion, and instead viewed the Debtor's objection as a blanket challenge to the standing of the plaintiff in any court since the inception of the case in 2007.

In *In re: Sunflower Racing, Inc.*, 223 B.R. 222 (D. Kan. 1998), the Court said:

> Appropriate circumstances for a motion to reconsider are where the court has obviously misapprehended a party's position on the facts or the law, or the court has mistakenly decided issues outside of those the parties presented for determination. See *Anderson v. United Auto Workers*, 738 F. Supp. 441, 442 (Kan. 1990); *Refrigeration Sales Co., Inc. v. Mitchell-Jackson, Inc.,* 605 F. Supp. 6, 7 (N.D.Ill. 1983), aff'd, 770 F.2d 98 (7th Cir. 1985).

In the Case at bar, 1) the Debtor was only referring to the jurisdiction of this Court, which has a duty to establish standing of the parties in each case and 2) the issues surrounding the criteria to dismiss a case pursuant to 1307(b) were 'issues outside of those the parties presented for determination', *In Re: Sunflower*, supra.

First, from *Hake v. Simpson,* Case No.: 3:17-cv-420 (S.D. Ohio Dec. 20, 2017):

> Federal courts are courts of limited jurisdiction and there is a

2

presumption that a federal court lacks jurisdiction until it has been demonstrated. *Turner v. President, Directors and Co. of the Bank of North America,* 4 U.S. 8, 10 (1799)…Moreover, federal courts "have an independent duty 'to inquire *sua sponte* whenever a doubt arises as to the existence of federal jurisdiction.'" Kentucky Press Ass'n, Inc. v. Kentucky, 454 F.3d 505, 508 (6th Cir. 2006) (quoting Mt. Healthy City Sch. Dist. Bd. of Ed. v. Doyle, 429 U.S. 274, 278 (1977)).

Much of the confusion stems from the often-changed identity of the current alleged plaintiff/Movant, who within only the past few <u>months</u> has begun to newly-identify itself as:

'U.S. Bank NA, <u>successor trustee</u> to Bank of America, NA, <u>successor in interest</u> to Lasalle Bank National Association, as trustee, on behalf of the holders of the Bear Stearns Asset Backed Securities I Trust 2004-HE5, Asset-Backed Certificates, Series 2004-HE5' (emphasis added).

For the purpose of this motion, Debtor will refer to the current name shown above as "<u>USBANAII</u>".

However, when USBANAII initially entered the underlying case in 2016, it identified itself as:

U.S. Bank National Association, as Trustee, <u>successor-in-**interest**</u> to Bank of America, National Association, as Trustee, <u>successor by **merger**</u> to LaSalle Bank National Association, as Trustee for Bear Stearns Asset Backed Securities I Trust 2004-HE5, Asset Backed Certificates, Series 2004-HE5 (emphasis added to highlight false claim of a merger, leading to the false claim of being the 'successor-interest to Bank of America).

For the purpose of this motion, the Debtor will refer to the initial title USBANA used and shown above as "<u>USBANAI</u>".

Other iterations have been used by the Movant since 2016, but for the purposes of this motion, the two versions above are sufficient.

And to clarify further, the original Summary Judgment and Decree in Foreclosure was issued in 2007 to:

3

LaSalle Bank National Association LaSalle Bank National
Association, as Trustee for certificateholders of Bear Stearns
Asset Backed Securities I LLC Asset Backed Certificates,
Series 2004-HE5 as Trustee for certificateholders of Bear
Stearns Asset Backed Securities I LLC Asset Backed Certificates,
Series 2004-HE5.

For the purpose of this motion, Debtor will refer to the above original plaintiff as
"LaSalle".

The Note signed on March 5, 2004 by the Debtor in favor of Encore Credit Corp. was
specially-endorsed by Encore to LaSalle on March 22, 2004. The mortgage that secured the
Note was also assigned to LaSalle on that date.

No other entity has legally been assigned the mortgage, nor been transferred the Note.
Both loan instruments remain endorsed and assigned exclusively to LaSalle.

LaSalle ceased to exist after having been acquired in an all-cash purchase by Bank of
America (BOA) in 2007. Bank of America itself referred to the acquisition in its 2008 Annual
report filed with the Securities and Exchange Commission ("SEC") as an 'acquisition', not as a
merger.

From BOA's Annual Report on the SEC website:

> On October 1, 2007, we acquired all the outstanding shares of
> ABN AMRO North America Holding Company, parent of LaSalle
> Bank Corporation (LaSalle), for $21.0 billion in cash. With this
> acquisition, we significantly expanded our presence in metropolitan
> Chicago, Illinois and Michigan, by adding LaSalle's commercial
> banking clients, retail customers and banking centers.
>
> Full filing at: https://rvww.sec.eov/Archives/edear/data/7O858/0001 19312509041 126ldl0k.htm

No entity replied to the Debtor's November 2, 2018 amended motion, but from that time
forward, USBANAI no longer referred to itself as the 'successor-in-interest' to BOA as the result
of a 'merger' to LaSalle and instead began to refer to itself as shown in USBANAII.

4

While the change in title may not amount to an outright admission by USBANAII that it no longer is alleging that a merger took place and that BOA was not a successor-in-interest to LaSalle, nonetheless, the change is significant because it completely strips away the *only* evidentiary-quality 'authority' USBANAI relied upon in order to act in the underlying foreclosure case and appeals.

In addition, and also significant, USBANAII did not dispute the Debtor's allegation that it was not the Creditor nor a party in interest *in this case* when the Debtor raised the issue in his Objection filed in this case.

As a result of the now-omitted claims, and its refusal to deny the allegation that it was not a Creditor – nor a 'party in interest' – in the case at bar, USBANAII has fully exposed itself as having no right to be in this instant case because it has now effectively admitted it lacks a 'pecuniary interest' in the outcome.

Regardless of what the history in the underlying case holds, in no way, shape or form has USBANAII proved to this Court that it had a 'pecuniary interest' at the time it filed its Motion 60B on March 27, 2019, a requirement to invoke the jurisdiction of this Court.

*In Re: Alpha Resources, Inc*, Case No. 15-33896 United States Bankruptcy Court, E.D. Virginia, Richmond Division, decided December 12, 2016, the Court made clear standing is an essential threshold issue that needs to be *determined at the time of the objection*, or as applied to the instant case, at the time of the filing of the 60(B) motion:

> First, Mar-Bow lacks standing to raise the Objection, as Mar-Bow *no longer has a pecuniary interest* in the outcome of the Final Fee Application of McKinsey RTS. In order to entertain the Objection, *Mar-Bow must meet the threshold requirement for standing.* The "Cases" and "Controversies" requirement of Art. III, § 2 of the Constitution is fundamental to a federal courts' jurisdiction to hear a case. See *Spokeo, Inc. v. Robins,* 136 S.Ct. 1540, 1547 (2016) (citing *Raines v. Byrd,*

521 U.S. 811, 818 (1997)); *Cooksey v. Futrell*, 721 F.3d 226, 234 (4th Cir. 2013) (quoting *Miller v. Brown*, 462 F.3d 312, 316 (4th Cir. 2006)). "A party must have standing to meet the Article III case or controversy requirement." In re Alpha Nat. Res. Inc. et al., 544 B.R. 848, 854 (Bankr. E.D. Va. 2016).

In order to demonstrate standing, "[t]he plaintiff must have (1) suffered an injury in fact, (2) that is fairly traceable to the challenged conduct of the defendant, and (3) that is likely to be redressed by a favorable judicial decision."[17] *Spokeo, Inc. v. Robins*, 136 S. Ct. at 1547 (citing *Lujan v. Defenders of Wildlife*, 504 U.S. 555, 560 (1992); *Friends of the Earth, Inc. v. Laidlaw Envtl. Services (TOC), Inc.*, 528 U.S. 167, 180-81 (2000)). A party has suffered an "injury in fact" when it can show "an invasion of a legally protected interest . . ." that is "concrete and particularized" and "actual or imminent, not conjectural or hypothetical." *Lujan v. Defenders of Wildlife*, 504 U.S. at 560 (internal quotations and citations omitted).

In cases before a bankruptcy court, an objecting party *demonstrates* an "injury in fact" by *demonstrating a financial interest* in the outcome of a given proceeding. Bankruptcy courts decline to litigate objections to claims when the requested relief will have no financial impact on the litigant. See *In re Mushroom Transp. Co.*, 486 B.R. 148, 154 (Bankr. E.D. Pa. 2013) (finding administrative claimant's objection to a fee application of special counsel to the chapter 7 trustee moot for lack of pecuniary interest in the outcome); see also *Indiana State Police Pension Trust v. Chrysler LLC* (In re Chrysler LLC), 576 F.3d 108, 113 (2d Cir. 2009), cert. granted, judgment vacated with instructions to dismiss appeal as moot, 558 U.S. 1087, 130 S.Ct. 1015, Order 09-285 (Dec. 14, 2009), appeal dismissed as moot, 592 F.3d 370 (2d Cir. 2010). Specifically within the bankruptcy context:

> [A] party does not have standing to object to an application for compensation unless that party has a financial stake in the approval of the application. . . A party lacks a financial stake when, regardless of the outcome of the application for compensation, that party will not receive a distribution from the estate.
>
> *In re Moye*, 2012 WL 3217595, at *2 (Bankr. S.D. Tex. Aug. 7, 2012) (internal citations omitted).[18] (emphasis added).

6

Simply put, USBANAIII has not <u>demonstrated a 'pecuniary interest'</u> to this Court –

regardless of any decisions rendered in the state Courts – and it was an error for the Court to not

independently require USBANAII to provide evidentiary-quality proof of its initial claim of

being a Creditor, especially after the Debtor squarely and properly objected to that false claim

pursuant to *Simpson*, supra.

And even if, *arguendo*, the Court believes that the state Court decisions in favor of

USBANAI meant that USBANAI had 'standing' in those cases, the Court errored when it then

concluded that the 'standing' of USBANAI 'automatically' carried through to the question of

whether or not USBANAII is a 'party in interest' in the instant case, or that it is a Creditor.

Since the full naming protocol used by USBANAI and USBANAII are materially

different, the Court is not free to assume that whatever standing existed pre-2018 continues to

exist today.

In fact – given the speed and frequency at which note and mortgages are bought and sold

in today's securitized mortgage market – even if the naming protocol was identical in 2018 to

today, the Court still must seek *proof as a threshold* issue that the party filing the Objection

continues to hold a 'pecuniary interest' sufficient to qualify as the Creditor/party in interest in the

bankruptcy case, *In Re: Alpha*, supra.

It is entirely possible that Court felt constrained to make that inquiry due to a mistaken

application of the doctrines of res judicata and *Rooker-Feldman*, but not only do neither

doctrines apply to this instant case for reasons explained below, the Debtor can find no

'exception' in case law or the Federal Bankruptcy Code to the requirement placed on this Court

to ensure that the parties before it 'meet the threshold requirement for standing, *In Re: Alpha*,

supra.

To clarify, 100% of the judgments and orders that were issued by the lower Courts were issued in favor of USBANAI – A.K.A. the entity that misrepresented to the Courts in those proceedings that it obtained its authority to act as the result of a non-existent merger between LaSalle and BOA.

The challenge that the Debtor raised in his Objection is *only* and *exclusively* directed at USBANAII *in this Court*, the entity that _now disavows the merger_ and disavows that it is the successor-in-interest to BOA.

In addition to no longer claiming standing by virtue of a merger, USBANAII conceded the Debtor's allegation in this Court that USBANAII was *not the Creditor* in this case.

Instead of challenging the Debtor's assertion and simply producing evidentiary-quality material to support its initial claim of being a Creditor, it simply changed its 'status' in its reply in this Court to "Movant", which was obviously an effort to avoid the issue.

The lack of affirmative response by USBANAII comes on the heels of USBANAI not replying at all to the Debtor's amended motion filed on November 2, 2018 that LaSalle had legally died, which by state law triggered a 90-day period for the party of the decedent to substitute a new plaintiff in the case.

It would not have been difficult for USBANAI to simply file a motion to substitute itself as plaintiff if indeed it was the successor to LaSalle.

Instead, it ignored the motion in the same way that USBANAII ignored the Debtor's legitimate challenge to standing in this Court.

As a result of USBANA1 failing to substitute a plaintiff within 90 days, the Debtor and his wife filed a motion to dismiss the underlying foreclosure case pursuant to state law under

8

Civ. R. 25(A)(1). Neither version of USBANA has replied to that motion, and the state Court has not issued a ruling.

In this Court in a previous Adversary Proceeding during the Debtor's 2017 bankruptcy filing, USBANAIV confirmed that LaSalle *'no longer exists'*, but misrepresented that the reason LaSalle no longer exists was due to 'merger' (See Document 6 in Adv. Proc. NO. 4:17-ap-4027 filed on September 5, 2017). At page 3, USBABAI said:

> U.S. Bank became the successor trustee to LaSalle,
> which *no longer exists* due to merger. See July 29,
> 2016 Order (attached as Exhibit 7) (showing U.S.
> Bank is the successor-in-interest to LaSalle, which
> merged into Bank of America). (emphasis added)

There is no indication anywhere in the record that BOA purchased the Debtor's Note, nor was assigned the mortgage as part of the acquisition.

The allegation of merger was used to mispresent to the Court and to the Debtor that the Debtor's Note and Mortgage had been acquired by BOA via the 'merger doctrine', which allows merged banks with headquarters in the same state to legally and 'automatically' acquire notes and mortgages of the former bank without endorsements and transfers.

In the underlying Court proceedings, the Debtor has exposed that entire false narrative, *which is why USBANAI now calls itself USBANAII.*

Noticeably absent from the new name used in this Court is any claim that a merger ever occurred, and there is no longer a claim that BOA is the 'successor-in-interest' to LaSalle.

As such, the obvious question becomes under what authority did USBANAII file the 60(B) motion that it filed in this case?

> 1. There was no merger that would have automatically transferred the Note and
> Mortgage to any 'version' of USBANA.

9

2. The Note remains specially-endorsed to LaSalle and is not 'endorsed in blank'

3. The Mortgage securing the Note is assigned to LaSalle.

4. There is no valid assignment of mortgage to USBANA (either version)

5. LaSalle legally died more than 10 years ago, a fact confirmed by USBANAI.

6. No substitution of plaintiff, nor of trustee, nor of merger has been filed.

In an attempt to shut down this Court's rightful inquiry into these issues, USBANAII invoked both res judicata and the *Rooker-Feldman* Doctrine, and this Court agreed that the doctrines did indeed present a barrier for this Court to review previous judgments from the state Courts in the ongoing foreclosure case.

That decision was a clear error of law for several reasons.

## 2. *Rooker-Feldman* Doctrine Does Not Apply

In a 2012 article in the *Seton Hall Law Review*, the author begins by stating, "Federal courts frequently confuse the *Rooker-Feldman* doctrine with *Younger* abstention and preclusion law, often using these doctrines interchangeably to dismiss actions that would interfere with state court proceedings."[1]

The Debtor believes that is exactly what happened in the case at bar.

"After decades of confusion, the Supreme Court recently clarified the scope and proper application of the *Rooker-Feldman* doctrine in *Exxon Mobil Corp. v. Saudi Basic Industries Corp.32 and Lance v. Dennis*. In those cases, the Court held that *Rooker-Feldman* is a narrow doctrine, confined to "*cases brought by* state-court losers *complaining of injuries* caused by state-court judgments rendered before the district court proceedings commenced and

---

[1] https://scholarship.shu.edu/cgi/viewcontent.cgi?article=1427&context=shlr @ **Abstract**

*inviting district court review and rejection of those judgments*".[2]

This Court partially cited this quote from *Exxon*, supra, on page 5 of its June 5, 2019 Memorandum of Opinion, but failed to address the significance of the phrase 'cases brought by', and then left out completely the critical phrase, "inviting district review and rejection of those judgments."

The Debtor in the case at bar has not 'brought' a case to this Court in which he is 'complaining of injuries' caused by the state Court judgments, nor has he invited this Court to 'review and reject' those judgments.

As far as the Debtor can determine, the only time a party can 'bring' a case is as a Plaintiff, not as a Debtor merely objecting to a Motion 60B.

In fact, the Debtor is unable to find any case law that supports the legal conclusion of this Court that the *Rooker-Feldman* doctrine applies to the *defense* of a motion filed pursuant to 60(B), and instead can only find cases that apply the doctrine to cases filed by a *plaintiff* in federal court whether as a separate action, or as part of an Adversary Proceeding.

Further, even in cases 'brought' by a plaintiff, the doctrine only applies to a plaintiff who is specifically and *blatantly* "inviting district court review and rejection of those judgments," See, e.g., *Carmona v. Carmona*, 603 F.3d 1041, 1051 (9th Cir. 2010) (barring a claim that asked the federal district court to "order that the proceedings in Family Court in case number D181580 be dismissed with prejudice"); *Lawrence v. Welch*, 531 F.3d 364, 369 (6th Cir. 2008) (barring a claim that sought a declaration that the state decision "impermissibly impinges upon protected federal rights" (quoting Joint Appendix at 28, Lawrence, 531 F.3d 364 (6th Cir. 2008) (No. 07-1026)) (internal quotation marks omitted)).

---

2 https://scholarship.shu.edu/cgi/viewcontent.cgi?article=1427&context=shlr @ Page 559

In contrast, the Debtor is not asking this Court to do anything to the previous judgments rendered in state Court, nor does the Court have to do anything since the Debtor is not challenging the standing of USBANAI in the state Courts, and only was challenging the standing of USBANAII in this Court.

Even if the Court determines that *Rooker-Feldman* applies to a motion 60(B), the Sixth Circuit Court of Appeals has said exceptions to the doctrine exist if the decision was "procured through fraud, deception, accident, or mistake. . ." *Sun Valley Foods Co. v. Detroit Marine Terminals, Inc. (In re Sun Valley Foods Co.)*, 801 F.2d 186, 189 (6th Cir.1986) (quoting *Resolute Ins. Co. v. North Carolina*, 397 F.2d 586, 589 (4th Cir.1968)).

USBANAI has misrepresented its legal position in the state Courts since it entered the underlying case in 2016, falsely alleging that its authority stemmed from a merger that has now been shown did not happen. That is exactly the type of fraud or deception that the Sixth circuit referred to in *Sun Valley*, supra.

Significantly, the *Rooker-Feldman* cases from which the name of the doctrine comes, and the cases cited by the Court in justifying its reliance on *Rooker-Feldman – Nathan Hake Farms, LLC v. Simpson (In re Hake)*, 2019 WL 1941480, * 2 (6th Cir. 2019) (unpublished) (quoting *Brent v. Wayne Cty. Dep't of Human Servs.*, 901 F.3d 656, 674 (6th Cir. 2018) – all share a common nucleus of facts which is that they were *complaints* filed in federal court by state court losers *asking the federal court to review and reject* the state Courts' denial of the plaintiff's *federal claims involving constitutional issues.*

In the case at bar, the Debtor has not filed a complaint and there are no federal constitutional questions involved that this Court is being 'blatantly' invited to overturn. In fact, even if the Court agrees with Debtor that USBANAII is *not the Creditor today in this Court*, that

12

finding has no bearing whatsoever on what the state Courts determined in 2018 regarding the alleged standing of USBANAI in the state Courts.

Further, the Debtor was not challenging whether the USBANAII was the 'real party in interest' in this court, and instead, only whether or not it is a 'Creditor' or a *'party* in interest' in this Court. The terms 'party in interest' and *'real* party in interest' are not synonymous, according to Black's Law Dictionary.

As such, no decision of the lower Courts needs to be overturned by this Court.

Further, even if *Rooker-Feldman* did apply, which it does not for the reasons cited, the objection that was raised by the Debtor in this Court is exactly the type of "independent" claim that the Court addressed in *Exxon Mobil Corp. v. Saudi Basic Indus. Corp.*, 544 U.S. 280, 283, 125 S. Ct. 1517, 1521 (2005), which was recently cited and amplified by the Bankruptcy Appellate Panel of the Sixth Circuit Court of Appeals in a 2019 case – *In Re; Wohleber*, Case No. 18-8008:

> "[T]he *Rooker-Feldman* doctrine has been applied by [the] Court only twice, i.e., only in the two cases from which the doctrine takes its name . . . ." *Skinner v. Switzer*, 562 U.S. 521, 531, 131 S. Ct. 1289, 1297 (2011). Despite this, the Court has since noted that "lower federal courts have variously interpreted the *Rooker-Feldman* doctrine to extend far beyond the contours of the Rooker and Feldman cases,". Consequently, the Court has frequently returned to this issue to reiterate the narrow scope of the doctrine. Id.; *Lance v. Dennis*, 546 U.S. 459, 126 S. Ct. 1198 (2006); Skinner, 562 U.S. at 531.
>
> Singleton was decided prior to *Exxon. Exxon* and its progeny clarified that the doctrine does not incorporate preclusion law. "When there is parallel state and federal litigation, *Rooker-Feldman* is not triggered simply by the entry of judgment in state court[,]" *Exxon*, 544 U.S. at 292, because neither of the parent cases "supports the notion that properly invoked concurrent jurisdiction vanishes if a state court reaches judgment on the same or related question while the case remains *sub*

*judice* in a federal court." Id. In this situation, *Exxon* found that "there is jurisdiction and state law determines whether the defendant prevails under principles of preclusion." Id. at 293.

The Court further explained that even without concurrent proceedings, such as when "a party attempts to litigate in federal court a matter previously litigated in state court[,]" *Rooker-Feldman* does not apply when the plaintiff in federal court "present[s] some independent claim, albeit one that denies a legal conclusion that a state court has reached in a case to which he was a party . . . ." Id.

In the case at bar, the Court expressed concern at page 5 in its June 5 decision that,

> If the court were to consider Debtor's argument that U.S. Bank is not LaSalle's successor, it would be acting as an appellate court sitting in review of the state courts, which it cannot do.

Again, the Court misapprehended the Debtor's position. The Debtor was not making the argument that 'U.S. Bank is not LaSalle's successor'. Instead, the Debtor was *only* making the argument – which is clearly an independent claim – that USBANAII is not the Creditor/party in interest in the bankruptcy case. Nowhere in the Debtor's brief did he make a claim that 'U.S. Bank is not LaSalle's successor'.

Debtor believes that the Court errored when it interpreted the Debtor's Objection regarding the Movant's status to mean what the Court then wrote above, and then compounded that error when it said it would be acting as an appellate court on that issue.

However, as cited in *Exxon* and *In Re: Wohleber*, supra, even if the *effect* of a properly-made decision in this Court 'denies a legal conclusion' made in the state courts, *Rooker-Feldman* still does not apply. See also *Evans v. Cordray*, Sixth Circuit Court of Appeals, No. 09-3998, 2011.

### 3. Res Judicata Not Applicable

For many of the same reasons from above, res judicata is not applicable either.

14

The objection that the Debtor raised regarding whether or not USBANAII is the Creditor/party in interest today in bankruptcy Court bears no resemblance to the same 'nucleus of facts' that were allegedly 'litigated' in the state Courts.

For starters, even if the state Court proceedings determined that USBANAI was the trustee and successor-in-interest to LaSalle, those findings were based on the misrepresentation put forth by USBANA1 that its authority stemmed from a merger to BOA, and that BOA was the success-in-interest to LaSalle. As discussed above – and USBANA1 now admits by default – that narrative was and is not accurate and instead was presented to the Courts with intent to deceive.

The Ohio Supreme Court spelled out nearly 80 years ago the requirements for res judicata to apply, and based on that directive and other case law, res judicata is not applicable in the instant case.

In *Norwood v. McDonald*, 142 Ohio St. 299 (Ohio 1943) 142 Ohio St. 299 52 N.E.2d 67, the Court said:

> The doctrine of res judicata is that an existing final judgment rendered upon the merits, *without fraud or collusion*, by a court of competent jurisdiction, is conclusive of rights, questions and facts in issue, as to the parties and their privies, in all other actions in the same or any other judicial tribunal of concurrent jurisdiction." 30 American Jurisprudence, 908, Section 161. See, also, Hinton, Admr., v. McNeil, 5 Ohio, 509, 511, 24 Am. Dec., 315; Stein v. Steamboat Prairie Rose, 17 Ohio St. 471, 93 Am. Dec., 631; James v. Allen County, 44 Ohio St. 226, 6 N.E. 246, 58 Am.Rep., 821; State v. Cincinnati Tin Japan Co., 66 Ohio St. 182, 64 N.E. 68.
>
> If, however, the two suits do not involve the same claim, demand, and cause of action, such effect will not be ordinarily given to the prior judgment." (Italics ours.) 30 American Jurisprudence, 914, Section 172. To constitute a bar there must be identity not only of subject matter but also of the cause of action. In other words, a judgment in a former action does not bar a subsequent action where the cause of action prosecuted is not the same, even though each

15

action relates to the same subject matter. 30 American Jurisprudence, 915; 34 Corpus Juris, 813; Restatement of Judgments, 158, 159 and 208;

It is to be observed that "in the application of the doctrine of res judicata, if it is doubtful whether a second action is for the same cause of action as the first, the test generally applied is to consider the identity of facts essential to their maintenance, or whether the same evidence would sustain both. If the same facts or evidence would sustain both, the two actions are considered the same within the rule that the judgment in the former is a bar to the subsequent action. If, however, the two actions rest upon different states of facts, or if different proofs would be required to sustain the two actions, a judgment in one is no bar to the maintenance of the other." 30 American Jurisprudence, 918, Section 174. See, also, 2 Freeman on Judgments (5 Ed.), 1447, Section 687; Bell v. Merrifield, 109 N.Y. 202, 16 N.E. 55, 4 Am. St. Rep., 436; Curtiss v. Crooks, Trustee, 190 Wn. 43, 66 P.2d 1140. (emphasis added).

In another federal case involving the Debtor – *Smith v. Encore Credit Corp.* in the

Northern District of Ohio Eastern Division 2008 No. 4:08 CV 1462 – the Court rejected a

defense of res judicata/issue preclusion for the same reasons it should be rejected here...neither

the issues nor the parties are *exactly* the same:

Next, Defendants argue that issue preclusion prevents the Smiths from seeking a declaration that the Loan was illegal and void, rescission of the Loan, and termination of the Loan documents. The Full Faith and Credit Act, 28 U.S.C. § 1738, requires federal courts to give state court judgments the same preclusive effect that the state would afford such judgment. *McCormick*, 451 F.3d at 397 (citing Exxon, 125 S.Ct. at 1527). Ohio's doctrine of issue preclusion, also known as collateral estoppel, holds that a party asserting issue preclusion has the burden of establishing the following elements:

(1) the party against whom estoppel is sought was a party or in privity with a party to the prior action;

(2) there was a final judgment on the merits in the previous case after a full and fair opportunity to litigate the issue;

(3) the issue must have been admitted or actually tried and decided and must be necessary to the final judgment; and

16

(4) the issue must have been identical to the issue involved in the prior suit.

*Dye v. City of Warren*, 367 F. Supp. 2d 1175, 1184-85 (N.D. Ohio 2005); see also, *Knott v. Sullivan*, 418 F.3d 561, 568 (6th Cir. 2005); *State ex rel. Stacy v. Batavia Local Sch. Dist. Bd. of Educ.*, 779 N.E.2d 216, 219 (Ohio 2002) ("[T]hat a fact or a point that was actually and directly at issue in a previous action, and was passed upon and determined by a court of competent jurisdiction, may not be drawn into question in a subsequent action between the same parties or their privies, whether the cause of action in the two actions be identical or different."). Issue preclusion cannot be invoked because *similar* issues were previously litigated and decided; rather, the *same* issue must have been actually litigated and decided. See Thompson v. Wing, 637 N.E.2d 917 (Ohio 1994); Goodson v. McDonough Power Equip., Inc., 443 N.E.2d 978, 987 (Ohio 1983) ("Collateral estoppel precludes relitigation only when the identical issue was actually decided in the former case.").

Defendants argue that issue preclusion is proper because the issue of the Loan's validity was actually litigated and decided in the Foreclosure case when the state court determined that LaSalle was owed money on the note in connection with the Loan. Defendants reason that the Smiths' claims are precluded since the previous and present issues both encompass the broad topic of the Loan's validity. The Smiths counter that the issues in the Complaint were not "passed upon or determined" by the Mahoning County Court. Instead, the issues raised here deal with fraud, violations of federal lending laws, violations of the Ohio Consumer Practices Act, violations of the Ohio RICO Act and conspiracy, all of which are distinct from the question of the Loan's validity.

Based on case law, the Court cannot apply the broad application of the term "issue" that is espoused by Defendants to the claims in this case. The Court finds that Defendants have failed to show that the claims in the Complaint are identical to issues actually litigated and decided by the Mahoning County Court in the Foreclosure case. (emphasis in the original)

From the above two cases, as applied to the instant case, the following facts emerge that

the Court either overlooked, misapprehended or was not aware of:

17

1. **The Ohio Supreme Court said that res judicata only applies if the judgment was obtained 'without fraud or collusion'.**

   a. Clearly, a party misrepresenting that its authority to be in the Court stems from a merger that you later admit did not happen constitutes fraud.

2. **The 'same' – not merely 'similar' – issue needs to be involved.**

   a. In this case, the Debtor raised the issue that USBANAII is not the Creditor/party in interest in the bankruptcy case because it now is admitting that the merger did not happen and that BOA was not the successor-in-interest to LaSalle. That is a completely different issue than the issue involved in the state Court and Court of Appeals involving the Debtor and USBANAI. In those cases, the issue was whether not or USBANAI committed fraud by alleging that it was the real party in interest *in the underlying foreclosure case,* not whether or not USBANAII is a Creditor/party in interest in this case.

   Importantly, no Court has answered in the affirmative that USBANAI is the real party in interest and Court of Appeals simply stated that USBANAI did not commit fraud because it was the successor to LaSalle, though it also said the 'trust owns the Appellants note and mortgage', which makes no sense.

   Regardless, the question as to whether or not USBANAI committed fraud in the state cases is a different issue entirely than what the Debtor raised in this Court.

18

3. **The underlying case needs to have been 'fully and fairly litigated' in order for res judicata to apply.**

a. None of the cases that the Movant submitted as Exhibits in this case were 'fully and fairly litigated'. In fact, *none* of the motions were even objected to by USBANAI, including the motion that was subject of the appeal (technically, two motions were involved in the appeal, but the one related to standing was not objected to). *Nor was there was a hearing* on any of the motions involved.

Further, as this Court is well aware, the Court of Appeals cannot 'litigate' an abuse of discretion and can only review issues already litigated. Since no issues were litigated in the trial Court, the issues clearly were not 'fully and fairly litigated'.

4. **The underlying case must have been decided by a Court of 'competent jurisdiction'.**

a. As discussed earlier, LaSalle legally died in 2007 and no other party has been substituted as the plaintiff. USBANAI admitted that LaSalle ceased to exist in a previous bankruptcy case/Adversary Proceeding involving the Debtor.

Case law is clear that when a party dies, the court loses jurisdiction. Therefore, none of the decisions involving USBNAI or USBANAII since it entered the underlying case in 2016 have been rendered by a court of 'competent jurisdiction'.

19

5.  **The parties or their 'privies' need to be the same within the cases seeking to be estopped.**

    a.  A party that no longer claims authority as the result of a merger is hardly the '*same*' party that misrepresented itself as one deriving its standing from the alleged merger. In addition, the previous cases involving USBANAI also involved Mrs. Smith, but the case involving USBANAII only involves Mr. Smith. Therefore, the parties are not the same.

6.  **As seen in *Smith*, supra, the party asserting issue preclusion has the 'burden of establishing' the four elements needed to qualify for preclusion.**

    a.  Simply submitting exhibits to this Court of cases from two years ago hardly fulfills the 'burden of establishing' placed on the Movant that all four prongs have been met, pursuant to *Smith*, supra.

7.  **When there is any doubt related to whether or not the claims or issues are the same in two cases, the Ohio Supreme Court said that the best test is to look at the evidence need to decide both cases.**

    a.  In the state Court, *zero* evidence was used to support the claim of USBANAI that it had been assigned the mortgage, nor that the note had been transferred to it, nor that it owned the debt of the Debtor, nor that it was the substitute plaintiff, nor the substitute trustee.

        Instead, the Court of Appeals relied on a letter that the Debtor/Appellant submitted that merely stated that U.S. Bank (which is

the parent company of USBANA) was 'merely the trustee' on the account, and that the 'trust' owned the Debtor's note and mortgage, though the name of the trust was not identified. The letter was not accompanied by an affidavit, and it was clearly not 'evidentiary-quality' material. Again, the entire issue was not litigated at the trial court since there was no objection nor reply from USBANAI and no hearing was held.

Conversely, the 'evidence test' set forth by the Ohio Supreme Court in this Court should require the Movant at a minimum to produce the same materials needed to file a 'proof of claim', including specific and verifiable evidence that USBANAII is in fact the Creditor pursuant to the *In Re: Alpha*, supra.

Instead, in the case at bar, the Movant failed to include any evidence whatsoever that it is the Creditor/party in interest. When viewed against that test alone, the 'evidence test' clearly demonstrates that res judicata does not apply.

### 4.    Impermissible 'Commingling' of Rules Produced Incorrect Result

Adding to the confusion of the multiple faces of the Movant is the fact that there are several competing, and at times conflicting, rules involved in this instant case, specifically, 60(B), 362(d), 1307(b) and by extension, 105(a).

Importantly, the issues surrounding rule 1307(b) was not presented to this Court for review, and neither was 362(d). And yet, the Court at page 5-6 based much of its justification for reinstating the case on issues related to 1307(b). The Debtor understands that the original

motion to dismiss the case was filed pursuant to 1307(b), but the issues related to 1307(b) were not litigated between the Debtor and Movant in this case.

The only issue properly before this Court was the Motion 60B, and specifically, whether or not the Movant was entitled to relief from the judgment pursuant to the third and sixth prongs of that rule. The Movant failed in that effort, and the Court errored by then looking to rule 1307(b) to find justification for its decision despite the rule having not been raised by either side, pursuant to *In Re: Sunflower*, supra.

As a result of that mashup, the Court errored by applying the standards and criteria from one rule to the standards and criteria required in another.

Since this case was already dismissed pursuant to the Courts Order of February 5, 2019, the only issues that should have been considered to rule on the Movant's motion were whether or not USBANAII fulfilled its requirement under 60(B), which as this Court noted on page 6 of its June 5 Order require the Movant to "show that the adverse party committed a deliberate act that adversely impacted the fairness of the *relevant legal proceeding [in] question*." *Info-Hold,* 538 F.3d 448 (quoting *Jordan v. Paccar*, Inc.), 1996 WL 528950, *6 (6th Cir. 1996) (unpublished)).

Accordingly, the question then becomes one of defining the 'relevant legal proceeding in question', and case law is clear that the answer to that question is that the litigation in question is only the litigation that is the subject of the 60(B) motion, not the entirety of any other 'underlying litigation'.

From *Wahmann v. Kaur* in a case from the Eastern District of New York in an unpublished opinion in case No. 1:15-cv-04326, 2016:

> In order to obtain relief pursuant to Rule60(b)(3), a party must show that its *adversary committed fraud in obtaining the judgment* entered by the court, and it *may not rely on allegations of fraud concerning an underlying proceeding.*

Clovis v. Herald Co., No. 89-CV-703, 1993 WL 56017, at
*2 n.1 (N.D.N.Y. Mar. 1, 1993). (emphasis added).

In the case at bar, the only allegation of fraud that the Movant made was that the Debtor had engaged in a 'mortgage fraud scheme' allegedly stretching back for years and improperly involving the underlying state Court proceeding.

First, as the Debtor pointed out in his Objection to the 60B motion, mortgage fraud only applies to the securing of a mortgage and is wholly-inapplicable in this case.

Second, even if applicable, the only relevant fraud that could be considered as fraud involving the instant case would have been fraudulent conduct committed by the Debtor from the time he filed the bankruptcy case on February 19, 2019 until the time he properly and legally filed a motion to dismiss the case on February 25, 2019, and obviously there was none.

That is the only *'relevant legal proceeding'* that this case involves. There was nothing illegal or fraudulent about the Debtor filing the instant case, nor was there anything illegal, fraudulent or even containing a whiff of misconduct involved in the Debtor moving to dismiss the instant case, because as this Court noted on page 6 of its order, "Debtor had the right to voluntarily dismiss his chapter 13 case. 11 U.S.C. § 1307(b)".

As a result, as to prong 3 of the its 60(B)(3)(6) motion, Movant utterly failed to demonstrate that the Debtor "committed a deliberate act that adversely impacted the fairness of the relevant legal proceeding [in] question."

As to prong 6 of its motion 60(B)(3)(6), Movant attempts to rely on the 'catch all' bucket provided in the Civil Rules, but again, the Court errored in finding that the actions of the Debtor rightfully fell into that bucket.

First, as noted above, the 'relevant legal proceeding' only involves case No. 19-40227 filed in this Court on February 19, 2019 and dismissed on February 25, 2019.

23

Instead, what the Movant tried to do, and regrettably the Court agreed with, is to 'commingle' standards that are reserved for a motion under 362(d). In fact, the Movant used the exact words from 362(d) when he alleged that the Debtor was trying to 'hinder and delay' USBANAII from enforcing its judgment.

Further, the Movant cited other instances *from the underlying foreclosure proceedings* where the Debtor has allegedly 'hindered and delayed', but that is not the standard to judge the merits of a motion filed under 60(B)(6) and the Court errored when it applied that standard in its decision.

As an example, from page 6 of its decision, the Court said "Multiple facts support this contention", and then goes on to recount the long history and alleged sins involved in this case dating back to 2007. But neither the Movant nor the Court cite to any examples of the Debtor taking any steps within the two walls of this case – from February 19 to February 25 – to show that the Debtor engaged in any untoward behavior *procuring or dismissing this judgment* regardless of which standard is applied.

Regarding prong 6 of a 60(B)(6) motion, the Court in *In re Derringer*, No. 7-04-17330 MA (Bankr. D.N.M. Dec. 8, 2005), said:

> In general, relief is given under clause (6) in cases in which
> the *judgment was obtained by the improper conduct of the
> party in whose favor it was rendered* . . . under circumstances
> going beyond the earlier clauses of the rule.'" Id. (quoting
> Dowell v. Board of Educ. of Oklahoma City Pub. Schools,
> 782 F.Supp. 574, 579 (W.D.Okla. 1992) (quoting 11 Charles
> Alan Wright, Arthur R. Miller Mary Kay Kane, Federal
> Practice and Procedure § 2864 at 213 (1973)). (emphasis added).

Further, the Sixth Circuit Court of Appeals stated that a motion granted under 60(B)(6) should only be granted under 'exceptional or extraordinary circumstances' and only if the

circumstances do not apply under the first five prongs of 60(B). From *Cincinnati Ins. Co. v. Byers*, No. 97-3389, 151 F.3d 574 (1998):

> A district court should grant relief from operation of a judgment under Rule 60(b)(6) when it determines in its sound discretion that substantial justice would be served. See *Overbee v. Van Waters & Rogers*, 765 F.2d 578, 580 (6th Cir.1985). Such relief, however, should be applied *"only in exceptional or extraordinary circumstances which are not addressed by the first five numbered clauses of [Rule 60(b)]."* *Hopper v. Euclid Manor Nursing Home, Inc.*, 867 F.2d 291, 294 (6th Cir.1989). (emphasis added).

In the case at bar, the Movant was attempting to 'double-dip' by referring to both prong 3 and prong 6 of Civ. R. 60(B). But the essence of the Movant's allegation under BOTH prongs was that the Debtor was engaged in fraud and misconduct.

Since there's no evidence to support prong 3, it is impermissible to allege the same allegation again under prong 6, especially when there is nothing 'exceptional or extraordinary' about a Debtor filing a Chapter 13 case one day, and then for good reason (which the Court seemed to ignore), move to dismiss that case a week later.

### 5. Allegation of 'Bad Faith' Misplaced

As a preliminary matter regarding the allegation of bad faith and lack of 'candor', it should be noted that the Court inadvertently put its finger on the source of this 15-year-long train wreck when it questioned on page 2 in a footnote the 'candor' of the Debtor's self-entered property valuation of $450,000 as submitted in his 2017 bankruptcy:

> The court questions the candor with this figure. The original mortgage was $528,500.00. Debtor defaulted the year after he obtained the mortgage. By the time of the second bankruptcy case in 2017, the property had been subject to a foreclosure case approximately twelve years.

25

However, here is a screenshot of the Mahoning County Court docket in the underlying foreclosure case (2005-cv-3869) that shows the appraised value in 2017:

| 05/03/2017 | APPRAISER INFORMATION: LAND VALUE-- $ SALE DATE: | APPRAISER INFORMATION: LAND VALUE--$498,300.00 | SALE DATE: JUNE 20, 2017 & JULY 11, 2017 |
|---|---|---|---|
| 05/03/2017 | MAUREEN CLINE-APPRAISER FEES | MAUREEN CLINE-APPRAISER FEES  Receipt: 369251  Date: 05/03/2017 | |
| 05/03/2017 | DAVE KLACK-APPRAISER FEES | DAVE KLACK-APPRAISER FEES  Receipt: 369251  Date: 05/03/2017 | |
| 05/03/2017 | DOMINIC P VECHIARELLI-APPRAISER FEES | DOMINIC P VECHIARELLI-APPRAISER FEES  Receipt: 369251  Date: 05/03/2017 | |

And here is a screenshot of the average 'sale price to listing price' in Mahoning County for 2017:



Based on the two set of facts above, the Debtor in 2017 concluded the property was worth approximately $450,000, which is exactly the number reflected on his SofFA filed with the Court.

What the Court picked up on is the extreme level of mortgage and appraisal fraud that underpinned the underlying foreclosure case. In short, the broker at the time 'arranged' an appraisal of $630,000 in order to justify the refinance that the Debtor was seeking, which at that time required an 80% loan-to-value ratio. Two years earlier, the Debtor and his wife purchased the home for $500,000 with zero down. The fraudulent appraisal left the Debtor nearly $80,000 underwater, with an adjustable-rate loan that quickly jumped to – and has stayed at – 8.5% despite the lower rates of the past several years. Needless to say, the Debtor has never been able to recover, nor sell the property. The Debtor of course is not attempting to relitigate those issues here, but just pointing out the facts for the Court.

But beyond the valuation of the home, its clear that the Court has concluded that the Debtor has acted in bad faith since perhaps as early as 2007. However, it was an error by the Court to use that perception as a reason to grant the Movant's 60(B) motion.

Neither the Court nor the Movant cited any examples of bad faith *specifically* and *solely* related to the Debtors actions in *this* case.

To justify its position in granting the Motion 60(B), it appears that the Court relied on the split of cases that exist relative to whether or not a motion to dismiss a case pursuant to 1307(b) is 'absolute' or not.

The Court then went on to list three cases where the right to an absolute dismissal was called into question, but all of the cases cited are not on point with the case at bar because they all deal with misconduct within the actual cases, IE after filing and before dismissal - *In re McCraney,* the Debtor had mislead the BP attorney into believing that appellant was no longer in bankruptcy*; In re Cusano,* the Debtor engaged in a number of acts of misconduct during the time the case was pending including failing to appear for a hearing, not submitting his tax returns as ordered, failing to disclose a pending malpractice suit, and failing to disclose royalties from BMI. Further, the motion from the Creditor was filed as a Motion 59(e), which has a much different – and lower standard of proof – than does a motion 60(B); *In re Haddad,* the debtor failed to disclose a large insurance settlement.

Again, however, neither the Movant nor the Court allege a single act of misconduct on the part of the Debtor within the conduct of this instant case, and the issues related to 1307(b) had not been litigated. But in an effort to bring into consideration the Debtor's other alleged acts of bad faith throughout the years, the Court apparently relied on its inherit powers under 11 U.S.C. § 105(a), a rule that gives the bankruptcy Court almost unlimited power.

27

However, as the Bankruptcy Court of East Tennessee pointed out – and the Sixth Circuit

Court of Appeals agrees – that the right to dismiss a Chapter 13 case is 'absolute':

*In Re: Parker*, Case 1:16-bk-10539, 2016, the Court said:

> In the *chapter 13 context, the Sixth Circuit has expressly*
> *recognized that "[a]debtor . . . has an absolute right to dismiss*
> *a case which was originally filed under Chapter 13 at any*
> *time. 11 U.S.C. § 1307(b)." Liberty Nat'l Bank & Trust Co.*
> *V. Burba (In re Burba),* 42 F.3d 1388 (6th Cir. 1994)
> (unpublished table decision), available at 1994 WL 709314,
> at *10. In *Burba*, the Sixth Circuit was not required to
> address the intersection of competing motions under §§
> 1307(b) and (c). However, almost twenty years ago this
> court rejected the arguments relied on by the Fifth, Eighth,
> and Ninth Circuits, reasoning that (i) the text of § 1307(b)
> affords the debtor an unqualified right to dismiss a previously
> unconverted chapter 13 case, and (ii) courts lack inherent or
> equitable authority to craft an extra-statutory exception to the
> mandatory dismissal pre-scribed by 1307(b). *In re Patton,* 209
> B.R. 98 (Bankr. E.D. Tenn. 1997). The Second Circuit followed
> and expanded upon Patton's reasoning in *Barbieri v. RAJ*
> *Acquisition Corp. (In re Barbieri),* 199 F.3d 616 (2d Cir.
> 1999).

> Focusing on the text of the statute, both courts noted the
> difference between § 1307(b)'s use of the word "shall" and
> §1307(c)'s use of the word "may. As the Second Circuit explained
> at length: Section 1307(b) unambiguously requires that if a debtor
> "at anytime" moves to dismiss a case that has not previously been
> converted, the court "shall" dismiss the action. The term "shall," as
> the Supreme Court has reminded us, generally is mandatory and
> leaves no room for the exercise of discretion by the trial court.
> See *Anderson v. Yung kau,* 329 U.S.482, 485, 67 S.Ct. 428, 91
> L. Ed. 436 (1947) (analyzing the language of Fed. R. Civ. P. 25(a),
> and noting that "[t]he word 'shall' is ordinarily the language of
> command" (internal quotation marks omitted)). The only limitation
> of the right to dismiss is stated in § 1307(b) itself, which provides
> for dismissal "if the case has not been converted under section 706,
> 1112, or 1208 of this title" (emphasis supplied).The mandatory
> nature of § 1307(b) becomes even clearer when the language of
> that provision is compared with the permissive language of
> §1307(c). As the Supreme Court has observed, "[i]t is generally
> presumed that Congress acts intentionally and purposely when
> it includes particular language in one section of a statute but

omits it in another." *BFP v. Resolution Trust Corp.*, 511 U.S. 531, 537, 114 S. Ct. 1757, 128 L.Ed.2d 556(1994) (internal quotation marks omitted). "[W]hen the same [provision]uses both 'may' and 'shall,' the normal inference is that each is used in its usual sense—the one act being permissive, the other mandatory." *Anderson*, 329 U.S. at 485, 67 S. Ct. 428.

For these reasons, we conclude that §1307(b) gives a debtor an absolute right to dismiss a Chapter 13 petition, subject only to the limitation set forth in that section—namely, that the case must not have "been converted under section 706, 1112, or 1208 of this title." This conclusion reflects the intention of Congress to create an entirely voluntary chapter of the Bankruptcy Code.

The decision of the Court also includes a footnote with a link to an article in the *Cleveland State Law Review* that further highlights why the right to dismiss under 1307(b) is absolute:

For an excellent discussion of the split of authority on this issue and the impact of the Supreme Court's decisions in *Marrama and Law v. Siegel*, 134 S. Ct. 1188(2014), on this split, see Daniel J. Sheffner, The Chapter 13 Debtor's Absolute Right to Dismiss, 63 CLEV.ST.L.REV.833 (2015) available at http://engagedscholarship.csuohio.edu/clevstlrev/vol63/iss4/8.

Further, this Court's reliance on *Geberegeorgis v. Gammarino* (In re Geberegeorgis), 310 B.R. 61, 67 (B.A.P. 6th Cir. 2004) is also misplaced and not on point to the case at bar. *In Re: Geberegeorgis,* the motion to dismiss the bankruptcy case was filed by the bankruptcy trustee as an ordinary motion related to the Debtor's inability to continue to make his payments into the plan due to illness. It was not filed by the Debtor himself under 1307(b).

Also, as this Court noted with its reference in its decision to Rule 7055, *In Re: Geberegeorgis* also included an Adversary Proceeding complaint which was filed by the Creditor on September 25, 2000. In the case at bar, an Adversary Proceeding has not been filed.

In short, what appears to have occurred in the case at bar is that Court latched onto the splits that are evident in some Courts related to a Debtor's absolute power to dismiss a case

29

pursuant to 1307(b), and then lumped that fact together with its inherent powers under 105(a). However, in the process, the Court apparently failed to recognize the inapplicability of those cases to the case at bar, and also presumably did not see the decision of the Sixth Circuit Court of Appeals on this issue.

As such, the Court made an error when it determined that it had a right under 105(a) – or under any rule – to vacate the dismissal order that was already granted. The Debtor is well aware that the Court could impose almost any conditions pursuant to 105(a) on any future request the Debtor may make under 1307(b).

The issues identified by the Court – and to some degree by the Movant – are all the type of issues that may be raised within a motion for *in rem* relief, but this case was not at that stage yet, and hopefully, will never be. The Court errored when it treated it as such.

## CONCLUSION

For all the reasons contained herein, the Debtor prays that this Court amends its order of June 5, 2019 and **DENIES** the Movant's Motion to Vacate the Dismissal Order granted by this Court on February 25, 2019.

Respectfully submitted,

Ronald J Smith, *Pro Se*
1625 Gully Top Lane
Canfield, OH 44406
Ronald1625@hotmail.com
330-207-0705

30

## Certificate of Service

I certify that a copy of the foregoing was served by First Class U.S. Mail on June 14, 2019 upon:

Stephen R. Franks (0075345)
Manley Deas Kochalski LLC
P.O. Box 165028
Columbus, OH 43216-5028
614-220-5611
Attorney for Movant

Ronald J. Smith
Pro se

31