# UNITED STATES BANKRUPTCY COURT
## NORTHERN DISTRICT OF OHIO
### EASTERN DIVISION

In re:                              )
                                    )
                                    )        Case No.: 19-40227
Ronald Joseph Smith                 )
                                    )
Debtor                              )
                                    )        Chapter 13
                                    )
                                    )        **Judge Russ Kendig**

---

# DEBTOR'S MOTION TO ALTER OR AMEND JUDGMENT GRANTING RELIEF FROM AUTOMATIC STAY AND TO IMPOSE *IN REM* RELIEF

---

Debtor Ronald J. Smith hereby moves this Honorable Court, pursuant to Rule 59(e) of the Federal Rules of Civil Procedure (Rule 9023 of the Fed. Bankruptcy Code), to alter or amend its judgment entered on September 30, 2019 which granted the Movant's motion for relief from the automatic stay and imposed *in rem* relief.

## Standard of Relief under Rule 59(e)

A Motion to reconsider under Rule 59(e) should be granted to correct "(1) a clear error of law; (2) newly discovered evidence; (3) an intervening change in controlling law; or (4) a need to prevent manifest injustice." See *FDIC v. Commonwealth Land Title Ins. Co.*, 2013 WL 5215884, at *1 (N.D. Ohio Sept 13, 2013) (citing *Intera Corp. v. Henderson*, 428 F.3d 606, 620 (6th Cir. 2005).

## Summary of Argument

The debtor believes, and will demonstrate, that the Court improperly constrained itself by an incorrect interpretation and subsequent misapplication of the *Rooker-Feldman* doctrine, which then lead to multiple errors of law. Each will be detailed below.

1

This request specifically is being made under sections (1) a clear error of law and (4) a need to prevent manifest injustice.

The debtor hereby incorporates the facts set forth in its previous filings in this case.

## Discussion

### 1. The *Rooker-Feldman* Doctrine is inapplicable to core issues raised by Debtor

Ironically, the same case that the Court cited as to why it is unable to disturb the underlying foreclosure case – *Isaacs v. DBI-ASG Coinvestor Fund, III, LLC (In re Isaacs)*, 895 F.3d 904 (6th Cir. 2018) – actually supports the Debtor's position.

The *Isaacs* court identified two forms of relief that may be impacted by *Rooker-Feldman:*

    1) Issues that were part of the underlying proceedings and necessary for final determination in the lower courts.

    2) Issues that were *not* part of the underlying proceedings and were *not* necessary for final determination in the lower courts.

The determination of the *Isaacs* court was that only issues that fall under the first category are properly barred by *Rooker-Feldman* (or issue preclusion).

In *Isaacs*, one of the issues raised by the Debtor was an absence of proper 'perfection' of the security agreement. The Isaacs Court determined that perfection of the security agreement was not relevant to the lower Court's ability to adjudicate the foreclosure matter and that the issue was not raised in the lower Court. Accordingly, it established two categories of exception.

From *Isaacs*:

> As we have explained, [a]ppellate review—the type of judicial action barred by *Rooker - Feldman* —consists of a review of the proceedings already conducted by the "lower" tribunal to determine whether it reached its result in accordance with law. *When, in contrast, the second court tries a matter anew and reaches a conclusion contrary to a judgment by the first court, without concerning itself with the bona fides of the prior judgment (which may or may not*

2

*have been a lawful judgment under the evidence and argument
presented to the first court), it is not conducting appellate
review, regardless of whether compliance with the second
judgment would make it impossible to comply with the first
judgment.* In this latter situation the conflict between the two
judgments is to be resolved under preclusion doctrine, not
*Rooker - Feldman.* Coles v. Granville , 448 F.3d 853, 858–59
(6th Cir. 2006) (emphasis added) (quoting *Bolden v. City of
Topeka,* 441 F.3d 1129, 1143 (10th Cir. 2006)).

Here, Isaacs's claim that she can avoid the lien because it
was never perfected falls into the latter category: to rule in
Isaacs's favor, the bankruptcy court would not even have to
disagree with—let alone engage in "appellate review" of—the
state court's judgment. *The bankruptcy court could assume
the validity of the state-court judgment, and yet still determine
that Isaacs is entitled to relief under federal bankruptcy law
based on matters that were irrelevant to the state-court proceedings.*
Under these circumstances, it can hardly be said that Isaacs's
injury is "caused by" the state court's judgment. *Rooker – Feldman*
therefore, does not apply to this claim. (emphasis added).

In the exact same way in the case at bar, the state courts did *not* address four critical

aspects of the Movant's motion filed on June 24, 2009: 1) the lack of a valid and 'perfected'

Security Agreement in its favor[1], 2) the fraudulent and void allonge, 3) the lack of 'prudential

standing' in this Court, and 4) and whether the Movant is 'party in interest' in this Court. A

proper review of the four issues destroys the foundation of the Movant's implied position that it

is a party in interest with prudential standing as a secured creditor in this Court.

None of the issues were addressed by the state courts for the same reason cited in *Isaacs*

– they did not need to be addressed, in the case at bar, due to the Movant's now-abandoned

allegation made in state court that its authority was derived as the result of a merger.

The Debtor will address each issue in turn.

---

1 The Debtor did file a motion on September 27, 2018 in state court that is part of the record in
this case that alleged that the 2017 assignment was invalid because LaSalle did not exist at the
time of the assignment. The motion was denied due to res judicata. However, Debtor did NOT
raise at that time the issue raised here – that the new lien was unperfected due to a defect in the
recording. Further, the overall motion itself was not 'fully and fairly' litigated. In re Sweeney,
276 B.R. 186. (B.A.P. 6th Cir. 2002).

3

### 1. The Newly-Created Allonge

A proper reading and application of *Isaacs* requires that this court fully reviews the multiple fatal flaws properly raised by the Debtor that provides prima facie evidence that the 'allonge' submitted by the Movant is fraudulent, void and was <u>not attached to original note</u> as required by the state law and the Uniform Commercial Code. See OHIO REV.CODE § 1303.24(A)(2) and U.C.C. § 3-204.

In addition to the Movant dropping its allegation that its authority stemmed from a merger, the 2018 decision in the Seventh Court of Appeals also destroys the Movant's carefully-crafted, but false narrative.

In *U.S. Bank, National Association v Ronald J. Smith, et. al.* 2018, MA 0093, the Debtor appealed a decision by the Mahoning County Court of Common Pleas that denied based on res judicata the Debtor's motion that the new plaintiff in the case – the Movant – was committing fraud on the court by 'pretending' to be the real party in interest when it was not.

In the process of finding that the Movant did not commit fraud because it was acting as the trustee, the court specifically found that the Movant did <u>*not*</u> own the Debtor's note and mortgage, even though the Court ruled in the Movant's favor on the question of fraud upon the court. From *Smith*, supra, at paragraph 34:

> ***The Trust owns the note and mortgage*** on the property just as LaSalle did when it was the trustee. The ownership of the note and mortgage has not changed; only the trustee assigned to execute the sale of the property has changed. (emphasis added).

The finding of the Seventh District Court of Appeals was based on a letter the Debtor received from U.S. Bank on August 11, 2016 that stated, **"Please note the Trust is the owner of the mortgage and note, <u>not the trustee</u>."**

The letter was overlooked by the court and is attached as part of the record in this case as Movant's Part #4 Exhibit C at page 28 filed on 4/22/19.

4

The Debtor is not asking this court to 'review and reject' the appellate decision. In fact, the finding illustrates the exact problem the Movant has *in this court* because the appeals court found just one year ago that *another entity* besides the Movant 'is the owner of the note and mortgage'.

This point was further emphasized with the Seventh District's denial of the Debtor's Motion for Reconsideration, which the Movant attached to its Exhibits filed in this case on 6/24/19 and marked as Exhibit B.

Prior to filing its motion for relief in this Court, the Movant obviously realized that it needed to overcome in this Court the findings of the Court of Appeals issued just over one year ago – and supported by a letter from the Movant itself – that it does <u>NOT</u> own the note and mortgage and that both loan instruments are endorsed only to the former trustee.

In response, upon information and belief, the Movant developed fraudulent documents to enable the theft of real property owned by the Debtor. The review and authentication of those documents is not barred by *Rooker-Feldman* or issue preclusion.

### Fake Allonge is Born

In a brazen attempt to overcome the lack of note ownership, the Movant simply created an allonge out of whole cloth, which is attached as Plaintiff's Exhibit A from its 6/24/19 filing.

The allonge was not submitted in any proceeding until the Movant included it with its motion for relief in this court filed on 6/24/19, a fact which has not been refuted.

The sudden appearance of the allonge, its lack of proven attachment to the note, and the obvious and multiple defects on the face of the document are detailed in the Debtors objection of July 25, 2019 and were further raised in the hearing of September 12, 2019. (See Debtor objection at paragraphs 16-66).

5

The salient point of the above is that as illustrated in *Isaacs*, no lower court believed it needed to have proof of ownership of the note for the Movant to act, and as such the allonge was not introduced into any court prior to it being introduced in this Court on June 24, 2019.

Accordingly, raising the issue now is <u>not</u> barred by *Rooker-Feldman* or issue preclusion. It was an error of law to rule that Debtor's objection regarding the allonge was barred since both prongs of the *Isaacs* exceptions were met.

### Incorrect Interpretation of *Rooker-Feldman* Leads to Lack of Scrutiny of the Allonge

Since the Court incorrectly determined that it could not consider the Debtor's objections, it then overlooked and ultimately ignored the multiple irregularities involving the allonge, which include:

*In Re Wells, 407 B.R. 873* (Bankr. N.D. Ohio 2009), this very court faced nearly identical problems with a proof of claim filed by U.S. Bank – which this court said contains the same requirements as a Motion for Relief from Automatic Stay – as this court faces today and in obvious frustration, wrote:

> On May 2, May 16, June 12, June 19, June 26, July 10, July 16, July 18, and September 3, 2008, the court held special dockets addressing issues similar to those raised by U.S. Bank's proof of claim in this case; i.e., the legal standards governing an entity's right to enforce a promissory note secured by a mortgage on the debtor's residence***The July memorandum specifically addressed the applicable Ohio law based on the Uniform Commercial Code regarding endorsements and transfers of negotiable instruments and the assignment of mortgages, again including examples of deficient filings. Finally, on February 12, 2009, the court issued a third memorandum entitled "Motions for Relief from Stay Update: Endorsement of Note by alleged Attorney-in-Fact," alerting parties that powers of attorney should be carefully reviewed if relied upon to establish a creditor's right to relief from stay. ***U.S. Bank, through its attorneys, therefore, was on notice of the requirements for properly documenting a creditor's right to enforce a note secured by a mortgage, albeit in the context of a motion for relief from stay rather than a proof of claim. The

6

applicable law is, however, the same in both contexts.

As a result of the procedural failings, the *Wells* court found that U.S. Bank did not have a valid claim and issued a 'show cause' order to explain why it filed documents that were clearly incorrect. Highlights from the Court's Order include:

> a. There is no evidence before the court that the note executed by Michelle Wells was negotiated from Aegis Lending Corporation to U.S. Bank. The note is, therefore, still payable to Aegis Lending Corporation. The corollary is that U.S. Bank has not shown that it had an interest in the note on October 15, 2008, when it filed the proof of claim in this case. Nor has U.S. Bank shown that it has such an interest today.

> b. When a claim is not prima facie valid, the debtor need only object to the claim based on applicable rules or statutes to place the burden of proof back on the claimant. *Raleigh v. Illinois Dep't of Revenue*, 530 U.S. 15, 20-21, 120 S. Ct. 1951, 147 L. Ed. 2d 13 (2000); *eCast Settlement Corp. v. Tran (In re Tran)*, 369 B.R. 312, 318 (S.D.Tex.2007). Even if the creditor responds to a debtor's objection, the creditor carries the "burden of going forward as well as the ultimate burden of proof to establish its claim at the hearing on the substantive objection." *Burkett, 329 B.R. at 830*. And, a creditor's lack of adequate response to a debtor's formal or informal inquiries 'in itself may raise an evidentiary basis to object to the unsupported aspects of the claim, or even a basis for evidentiary sanctions, thereby coming within Section 502(b)'s grounds to disallow the claim.'

In a similar case from a bankruptcy court in Massachusetts, *In re: Lilia Shapoval* – 10-30175 MA, where the court determined at hearing that the allonge was not attached to the note, it held that an evidentiary hearing is required:

> The Court holds that, pursuant to Mass. Gen. Laws ch. 106 §3-204, the indorsement of a note set forth in an allonge is not valid if the allonge is not affixed to the note. *An evidentiary hearing is required to determine whether the allonge was ever affixed to the note and if so, when and what occurred thereafter.* (emphasis added).

In another case involving U.S. Bank and its failure to prove that the allonge was attached to the note, *In Re: Pinnock* – 16-23508 NY, the Court said:

> *Unfortunately for U.S. Bank, however, the Allonge is not firmly*

7

*affixed to the Note as required by NY U.C.C. § 3-202(2) and, therefore, U.S. Bank does not qualify as a "holder"* under NY U.C.C. § 3-202(1). See Hilton v. U.S. Bank (In re Hilton), 544 B.R. 1, 10-11 (Bankr. N.D.N.Y. 2016) ("While this language sets no specific outer-bounds for the definition of 'affixed,' it is clear that in this case, because the allonge is not at all touching or connected to the note, it does not fall within the UCC's contemplation. Due to this defect, . . . Defendant-Trustee is not a holder by virtue of its possession of a properly indorsed negotiable instrument, but is instead in possession of a note payable to the order of [the original payee]. This, in and of itself, is insufficient to prove Defendant-Trustee's holder status."). (Citations omitted – emphasis added).

Returning to the case at bar, the allonge submitted by the Movant as part of Motion filed on June 24, 2019 contained multiple irregularities – especially the lack of attachment to the original note – that the Debtor detailed in his Objection filed on July 25, 2019 and cited the cases above.

In fact, the Movant was unwilling to even assert by action of checking the box on the court-required form that an allonge was properly attached and relied upon to transfer the note.

Further, Movant did not attach the required power of attorney or provide any explanation as to why the allonge provides the Movant the authority to endorse the note.

The multiple deficiencies raised by the Debtor clearly show that the allonge is not 'prima facie valid' pursuant to *Wells*, which placed the burden of proof back on the claimant.

As such, the Movant bore the "burden of going forward as well as the ultimate burden of proof to establish its claim at the hearing on the substantive objection," and failed to do so. *Id.* Accordingly, at minimum, an evidentiary hearing must be held.

The Debtor requested an evidentiary hearing at the conclusion of his remarks, but based on the cases cited in September 30, 2019 Order of this court, the request was

8

apparently misapprehended as a request for an evidentiary hearing regarding *in rem* relief.

However, the Debtor was not asking for an evidentiary hearing regarding *in rem* relief, and instead, was specifically asking for an evidentiary hearing regarding the Movant's failure to address the 'substantive objections' raised regarding both the allonge and the assignment of mortgage.

From the transcript of the 9/12/19 hearing at page 8:

> **MR. SMITH:** Depending on what the Court
> 3 decides, certainly this screams at the very least for
> 4 an evidentiary hearing. As you know, the burden shifts
> 5 to the Plaintiff when there's an objection of this
> 6 type. There is no evidence in this case whatsoever,
> 7 and the so-called evidence they submitted is completely
> 8 and facially bogus. I would need an opportunity to
> 9 interview those people who signed those documents, and
> 10 I would certainly need actual evidence that those
> 11 documents are legitimate and I'm sure they're not. So
> 12 at the very least I would request an evidentiary
> 13 hearing.

As can be seen, the Debtor's request for an evidentiary hearing was unrelated to the Movant's motion for *in rem* relief, and as such, it was an error of law for the court to decline to schedule an evidentiary hearing to determine the validity of the allonge and the mortgage related to the Motion for relief from the automatic stay.

## 2. Movant's Security Agreement is Void

Similar to the issue of the allonge, also irrelevant to the lower courts in the case at bar was whether the Security Agreement of the new trustee (the Movant) had been perfected.

Both lower courts simply found that the Movant had as a result of an alleged merger the right to enforce the judgment issued in 2007 to another entity – Lasalle Bank National Association ("LaSalle"). In 2007, the Court of Common Pleas determined that LaSalle's lien had been perfected.

9

Again, both lower courts based the Movant's 'right to enforce' the judgment solely on the Movant's entirely unsupported and now-abandoned allegations that it was allegedly the 'successor-in-interest' to Bank of America ("BOA") who was in turn allegedly was the 'successor-by-merger' to LaSalle. The Debtor hereby requests that the court in the case at bar take judicial notice of the fact that *in this court*, the Movant has not claimed that its authority is derived as a result of a merger among any entity.

The Court of Appeals agreed in 2018 that the Movant is the successor trustee to LaSalle, even though it ignored the conflict inherit in its finding when it determined that the Movant no longer was 'owner and holder of the note and mortgage'. That finding contrasted with the finding in 2007 by the Common Pleas court when it determined that LaSalle was the 'owner and holder of the note and mortgage' at the inception of the case.

Regardless of the obvious conflict and rationale used, neither court sought nor required proof that the Movant had an assignment of mortgage, much less a perfected lien.

It then follows that the specific question of the perfection of the Movant's 2017 alleged lien never came up in any court involving the Movant.

The Debtor properly raised the very issue of an unperfected, void and invalid lien in his objection filed on July 25, 2019 and also during the hearing on September 12, 2019.

First, from the objection at paragraphs 20 and 21:

> 20. Further, Ohio Revised Code 1337.04 requires that the power of attorney that was used to file a document 'by virtue of a power of attorney' be recorded prior to the document that the power of attorney supposedly verifies.

> 21. There is no evidence that a power of attorney exists regarding the assignment of mortgage, nor is there any evidence that it was recorded prior to the recording of the assignment of mortgage, which is a violation of Ohio law and renders the recording void.

> 65. The Debtors dispute the validity of the assignment of mortgage filed by USBANA in this case in support of its motion.

10

Further, at the September 12, 2019 hearing, the Debtor said at page 3:

> 18 there's obviously a lot of history. I think that one
> 19 thing I want to make sure that is clearly understood,
> 20 obviously you're taking a good hard look at it, but the
> 21 documents that the attorney refers to, *none of those*
> 22 *documents were part of any state court proceedings.*

As a result of failing to overcome the Debtor's objection, the 2017 alleged assignment of mortgage to the Movant failed to create a new lien in favor of the Movant.

While the Movant submitted to this court the alleged assignment of mortgage that purports to assign the Debtor's mortgage to it (Movant's Exhibit D), nowhere does it allege that the 2017 assignment of the Security Agreement was *properly recorded* as a valid and perfected lien. Upon information and belief, this was yet another attempt by the Movant to create an *appearance* of a fact this is simply not true.

Even though the 2017 assignment is recorded in Mahoning County as evidenced by the stamp from the Recorder's Office, the recording of a document does not make it a 'legal' document. It is not the responsibility of the county recorder to verify the validity of documents that are filed.

Further, a copy of the assignment – even though recorded – does not authenticate the document with proper certification, which is missing in this case. Rule 902(4)(A)(B) states:

> (4) Certified Copies of Public Records. A copy of an official
> record — or a copy of a document that was recorded or filed
> in a public office as authorized by law — *if the copy is certified*
> *as correct by:*
>
> (A) the custodian or another person authorized to make the
> Certification; (emphasis added).

Instead, the Movant is likely well-aware of the consequences of making false statements to the Court and is fully-aware that the document is fraudulent and void, rendering the 2017 assignment therefore unperfected and as such, the alleged debt is unsecured.

11

This is the exact same situation as in *Isaacs*, supra.

Not only was the question of 'perfection' of the lien not necessary to determine the right to enforce the judgment issued to LaSalle, the issue of perfection never came up in the case at bar, and therefore is not barred now by issue preclusion either. Therefore, both prongs of the *Isaacs* exception are met.

As a result, the court erred when it concluded it could not address based on the *Rooker-Feldman* doctrine the issue of the void and unperfected 2017 assignment of mortgage.

### 3. The Court Errored by Overlooking the Prudential Standing Requirement of Federal Courts

Another 'sleight of hand' by the Movant that was overlooked by the Court – despite being properly-raised by the Debtor in both his 7/25/19 motion to object and at the 9/12/19 hearing – is that while the decisions of the state courts may have granted the Movant 'constitutional standing' as one asserting the rights of another, that level of standing is insufficient in this Court.

From the September 12, 2019 hearing at page 6:

> **Mr. Smith:**
> 15. I also refer to Veal versus American Home
> 16 Services in there, which brings up this issue of
> 17 prudential standing. And I know that this Court has
> 18 already ruled that they have a pecuniary interest, that
> 19 U.S. Bank has a pecuniary interest in the note due to -
> 20 - or excuse me, in the mortgage, due to this
> 21 assignment. Again, that assignment was not litigated.
> 22 It was created and there was fraud involved in the
> 23 creation of it.
> 24 But even given that, according to Veal, that
> 25 does not give them prudential standing. In essence,
> Continued on page 7:
> 1 they don't have a dog in the hunt. There is nothing in
> 2 the motion that indicates that they're the Creditor,
> 3 nothing in the motion that indicates that they have the
> 4 right to do anything. There is no declaration anywhere
> 5 by anybody that U.S. Bank is owed any money whatsoever.
> 6 They are simply a trustee that is hired by some larger

12

7 power within this overall consortium to carry out these
8 tasks.

This overlooked point is further illustrated from *Veal v. Am. Home Mortg. Servicing, Inc.*

*(In re Veal)*, 450 B.R. 897 that the Debtor cited in his objection and mentioned at hearing:

> Both Wells Fargo and AHMSI satisfy the relatively minimum
> requirements of constitutional standing: they each have shown
> injury in fact, causation, and redressability. Injury in fact is shown
> with respect to Wells Fargo by the automatic stay's prohibition
> on its right to exercise its alleged remedies against the Veals,
> and with respect to AHMSI by the effect of claim allowance
> procedures on its ability to receive a distribution from the
> Veals' estate. Causation exists by the simple fact that neither
> Wells Fargo nor AHMSI may exercise their nonbankruptcy
> remedies due to the existence of the automatic stay. Finally,
> redressability exists in each case because the relief requested,
> if appropriate, would address and remedy the claimed injury.
> 2. Prudential Standing
>
> *Even though Wells Fargo and AHMSI may meet the constitutional
> minima for standing, <u>this determination does not end the inquiry</u>.*
> They must also show they have standing under various prudential
> limitations on access to federal courts. Prudential [**16] standing"'
> embodies judicially self-imposed limits on the exercise of federal
> jurisdiction."' *Sprint, 554 U.S. at 289* (quoting ElkGrove, 542 [*907]
> U.S. at 11); *County of Kern, 581 F.3d at 845.* (emphasis added).

Further, even if the Court ultimately agrees that the allonge is not valid and that

the Movant has the right to proceed regardless as the 'trustee' based on the decision of

the Seventh District Court of Appeals, the *Veal* case destroys that proposition:

> In this case, one component of prudential *standing*
> is particularly applicable. **It is the doctrine that a plaintiff
> must assert its own legal rights and may not assert the legal
> rights of others.** *Sprint, 554 U.S. at 289; Warth, 422 U.S.
> at 499; Oregon v. Legal Servs. Corp., 552 F.3d 965, 971*
> (9th Cir. 2009). (emphasis added)

Further from *Veal*, where even though the *Veal* court found that the mortgage in

question was valid – a condition not proven in the case at bar – nonetheless still found

that Wells Fargo did NOT have a 'colorable claim' in bankruptcy:

13

>...The Veals have a second argument, and it has merit. They
>assert that, as a matter of law, the bankruptcy court applied
>an incorrect legal principle in determining that Wells
>Fargo had an ownership or other property interest in
>the Note. The Veals argue that had the bankruptcy court
>applied the correct test, it would have found that Wells
>Fargo had not established such an interest, and thus its
>Asserted rights under the Mortgage did not constitute
>a colorable claim to enforce a right against property of the
>estate.

In the same way, as noted above, even though the Seventh District Court of Appeals

determined that the Movant had the right to pursue the foreclosure action in the state court in its

role as trustee for an unnamed trust even though *it was then acting on behalf of 'another'*, the

very circumstance that is barred by the doctrine of prudential standing pursuant to *Veal* because

the bar is raised in federal court. From *Veal:*

>In particular, because it did not show that it or its agent
>had actual possession of the Note, Wells Fargo could
>not establish that it was a holder of the Note, or a
>"person entitled to enforce" the Note.[35] In addition, even
>if admissible, the final purported assignment of the Mortgage
>was insufficient under Article 9 to support a conclusion
>that Wells Fargo holds any interest, [*918] ownership
>or otherwise, in the Note. Put another way, without any
>evidence tending to show it was a "person entitled
>to enforce" the Note, or that it has an interest in the Note,
>Wells Fargo has shown no right to enforce the Mortgage
>securing the Note. Without these rights, Wells Fargo cannot
>make the threshold showing of a colorable claim to the Property
>that would give it prudential *standing* to seek stay relief or to
>qualify as a real party in interest.

As such, pursuant to *Isaacs,* supra, the question of the Movant's prudential standing in

this court is not barred by either the *Rooker-Feldman* doctrine or by issue preclusion since it was

not needed or raised in the lower courts. Both prongs of the *Isaacs* standard are met.

**4. The Court Errored When it Found Anew That The Movant Was a Party in Interest**

14

As part of its decision on September 30, 2019, the court said at page 2, "The court previously determined that US Bank is a party in interest and therefore has the right to pursue relief from stay and the co-debtor stay."

However, that finding was rooted in the Court's earlier incorrect finding on July 15, 2019 that, "The record contains a Corporate Assignment of Mortgage, recorded in Mahoning County on October 10, 2017, that gives U.S. Bank a requisite pecuniary interest. (Resp. to Debtor's Objection Motion to Vacate Dismissal, ECF 24-3)".

As noted above, since the recording of the Corporate Assignment of Mortgage is void based on the lack of a preceding power of attorney, and the document itself was not certified as accurate, it is improper for the Court to continue to hold that the document is legally 'recorded'.

Additionally, without any evidence that the Movant paid value for the debt that the mortgage purports to secure pursuant to Article 9, section 203 of the Uniform Commercial Code, there is no legal basis for the Court's holding that the 2017 assignment creates a 'pecuniary interest'.

All of these flaws were properly raised by the Debtor and left unrefuted by the Movant.

For the Court to continue to rely on the document as one that creates a 'pecuniary interest' creates manifest injustice, which is defined as "[a]n error in the trial court that is direct, obvious, and observable, such as a defendant's guilty plea that is involuntary or that is based on a plea agreement that the prosecution rescinds." BLACK'S LAW DICTIONARY 974 (7th ed. 1999).

Further, a close reading of the decision from the Seventh District Court of Appeals does not reach the issue of whether or not the Movant is the real party in interest, holding instead only that it did not commit fraud by misrepresenting its status as the trustee.

From the Seventh District in the case submitted by the Movant as Exhibit B:

15

{14} The *only issue* that was properly before us on
appeal of the dismissal of their 60(B) action was the
allegation of fraud asserted against U.S. Bank.
Because Appellants did not identify any evidence
in the record demonstrating that U.S. Bank misrepresented
its status in this case, their application for reconsideration
of our decision regarding the Civ.R. 60(B)(5) dismissal
has no basis. (emphasis added).

Nowhere in the decision of the appeals court – either in the decision regarding

reconsideration nor in the original appellate decision – did the Court determine that the Movant

was the 'real party in interest'. In fact, it found just the opposite when it determined that the

Movant was merely the trustee acting on behalf of another 'real' party – the unnamed trust.

Finally, when coupled with the multiple fatal flaws that render the allonge useless, the

Movant "has shown no right to enforce the Mortgage securing the Note. Without the rights to

enforce***, the Movant does not qualify as a real party in interest", *Veal*, supra.

Given the above, the Court errored when it determined anew that the Movant is a 'party

in interest' in this case. There simply is no evidence for the court to point to that enables

continued reliance on its initial finding that is now demonstrably false. To allow that holding to

stand would create 'manifest injustice' in this case.

**5. The Court Errored When it Found That The Movant Was Entitled to Relief From Stay**

Under § 362(d), the bankruptcy court may grant relief from the automatic stay on request

of a 'party in interest'. However, the Bankruptcy Code does not define the term 'party in

interest'. As a result, status as 'a party in interest' under § 362(d) 'must be determined on a case-

by-case basis, with reference to the interest asserted and how [that] interest is affected by the

automatic stay', *Veal*, supra, quoting Kronemyer, 405 B.R. at 919 (quoting In re Woodberry, 383

B.R. 373, 378 (Bankr. D.S.C. 2008)). See also *In Re Vieland*, 41 B.R. 134 (Bankr. N.D. Ohio

1984).

16

In the case at bar, once the Court properly applies *Isaacs* and disallows the phony assignment of mortgage and bogus allonge, and properly applies the 'prudential standing' requirement, it becomes plainly evident that the Movant is not a 'party in interest' deserving of the stay being lifted since the continued imposition of the stay does not affect the interests of the Movant, which are none. From *Veal*:

> Our prior precedent is appropriately lenient with respect to *standing* for stay relief. This Panel said in Kronemyer that "[c]reditors may obtain relief from the stay if their interests would be harmed by continuance of the stay." *Kronemyer*, 405 **[\*914]** B.R. at 921.

Further from *Veal*, in language that applies to the case at bar since the Movant has failed to show a 'colorable claim' in this Court:

> Not surprisingly, Wells Fargo disagrees. It argues that it submitted documents in support of its relief from stay motion which established a "colorable claim" against property of the estate***Simply put, the colorable claim standard **[\*\*50]** set forth in Robbins does not free Wells Fargo from the burden of establishing its status as a real party in interest allowing it to move for relief from stay, as this is the way in which Wells Fargo satisfies its prudential *standing* requirement.

Since the exact same flaws found in *Veal* are applicable to the case at bar, the Court errored when it granted the Movant's motion for relief from the automatic stay.

## 6. The Court Errored When it Granted *In Rem* Relief to an Unsecured Party

The Federal rules of bankruptcy under 11 U.S.C. § 362(d)(4)(B) are clear that only a *secured creditor* may seek *in rem* relief.

Section 362(d)(4) states that relief can be granted "with respect to a stay of an act against real property under subsection (a), *by a creditor whose claim is secured* by an interest in such real property, if the court finds that the filing of the petition was part of a scheme to delay, hinder, or defraud creditors that involved ... (B) multiple bankruptcy filings affecting such real

17

property." *In re Hernandez* - Case No. 16-42059, Adv. Pro. No. 16-04175. (emphasis in the original).

A secured claim is defined by the Bankruptcy Code to mean "[a]n allowed claim of a creditor secured by a lien on property in which the estate has an interest ... to the extent of the value of such creditor's interest in the estate's interest in such property." 11 U.S.C. § 506(a)(1), *Graham v. Huntington National Bank (In re Medcorp. Inc.)*, 472 B.R. 444 (2012).

Continuing from *Hernandez*, which squarely addressed the issue of granting *in rem* relief to a party who is not a secured creditor:

> The 9th Circuit Bankruptcy Appellate Panel (the "BAP") opinion of *Ellis v. Yu* is highly instructive on the analysis of a § 362(d)(4) question. 523 B.R. 673. *In Ellis*, the BAP reversed the bankruptcy court's granting of *in rem* relief to a party who was not a secured creditor but instead the owner of the property. **The BAP found that the first step of the § 362(d)(4) analysis required a finding that the moving party be a secured creditor.** (emphasis added).

Here again, after allowing for a correct application of *Isaacs* that does not implicate *Rooker-Feldman*, the Movant clearly does not qualify as a 'secured creditor' since its lien is not perfected and it is not a creditor, both attributes that are required for *in rem* relief.

In fact, notably, the Movant stopped referring to itself as a 'Creditor' after the Debtor pointed that misrepresentation out months ago in this Court and now refers to itself as "Movant" instead.

Given the above, it was an error of law for the Court to grant *in rem* relief.

### Summary of Above

When seen in its entirety and not truncated by the incorrect application of *Rooker-Feldman*, the picture that emerges of the Movant is not pretty, and the result is even worse.

18

Before this Court is a Movant that does not have a valid assignment of mortgage, does not have a perfected lien, does not have a legally transferred note, and does not allege that it is owed any money whatsoever.

Not only is the 2017 assignment of mortgage not legally recorded, it was allegedly assigned by a power of attorney allegedly acting for LaSalle Bank nearly 10 years after LaSalle ceased to exist. Ohio law is clear that a power of attorney cannot outlive its principal. The power of attorney was not attached in violation of state law and local court rules.

The allonge the Movant is now relying on was not attached to the note per Ohio and UCC law. Further, the allonge purports to transfer the note from Bank of America to the Movant, but nowhere in the chain of title does Bank of America appear as an owner of the note. Ohio law is clear that a note cannot be transferred by a party that does not own the note. In addition, the allonge was allegedly prepared by an attorney in fact for JP Morgan, but the power of attorney is not attached, again, violations of state law and local court rules. There is no indication that JP Morgan ever owned the note. The identity of the company that the person that signed the allonge represents is not provided. There no proof or indication that the note was allegedly transferred prior to the filing of the Debtor's petition on February 19, 2019. The Movant lacks prudential standing and is not a party in interest. The Movant has not proved that it owns either the mortgage, the note or the debt.

As a result, this Court is unknowingly facilitating a process that allows for property to be taken away by an entity that has failed to show that it has a legal right to do so, which is a violation of the Debtor's United States Constitutional due process rights and Ohio Constitutional Inalienable Rights. U.S. Const. am.14; Section 1.01, Art. I, Ohio Constitution.

Further, if this Court's ruling is allowed to stand, the Court will also be facilitating the commission of multiple state and federal crimes involving felony theft of property and more.

## CONCLUSION

For the reasons contained herein, the Debtor prays that this Court alters or amends its decision of September 30, 2019 and grants the relief that the Debtor requested in its Objection of July 25, 2019. In the alternative, and at minimum, the Debtor request that the Court stay the order pending an Evidentiary Hearing to determine the validity of both newly-created documents – the 2017 assignment of mortgage and the unattached allonge. Further, the Debtor requests any other relief as may be appropriate.

Respectfully submitted,

Ronald J Smith, *Pro Se*
1625 Gully Top Lane
Canfield, OH  44406
Ronald1625@hotmail.com
330-207-0705

## Certificate of Service

I certify that a copy of the foregoing was served by First Class U.S. Mail on October 10, 2019 upon:

Stephen R. Franks (0075345)
Manley Deas Kochalski LLC
P.O. Box 165028
Columbus, OH 43216-5028
614-220-5611
Attorney for Movant

Michael A. Gallo
5048 Belmont Avenue
Youngstown, OH 44505

Ronald J. Smith
Pro se

20