# UNITED STATES BANKRUPTCY COURT
## NORTHERN DISTRICT OF OHIO
## EASTERN DIVISION

In re:                        )
                              )        Bankruptcy Case No.: 19-40227
**Ronald Joseph Smith**       )
                              )        Appeal Case No.: 19-cv-2682
**Debtor**                    )
                              )        Chapter 13
                              )        **Judge Russ Kendig**
                              )

---

## DEBTOR'S EXPEDITED MOTION FOR STAY PENDING APPEAL

---

Pursuant to Bankruptcy Rule 8007(a)(1)(A), Debtor hereby submits the above-captioned motion. The reason for the expedited request is that the sale of the Debtors home is imminent since an Order of Sale was issued to the Mahoning County Sheriff on November 17, 2019.

In order to prevail on a motion for stay pending appeal, four well-established prongs must be considered. The Sixth Circuit Court of Appeals has held that "[t]hese factors are not prerequisites that must be met, but are interrelated considerations that must be balanced together." *Michigan Coalition* 945 F.2d 150, 153-54 (6th Cir. 1991)).

Debtor submits that he has met the standards required by all four prongs and will address each below. The appeal covers all Orders from the court since case inception, but the stay request only involves the Final Order of September 30, 2019 and subsequent related Order of November 1, 2019 because those Orders are now ripe for appeal – see dismissal of the Debtor's prematurely-filed appeal with the Sixth Circuit Court's Bankruptcy Appellate Panel – *In Re Ronald Joseph Smith*, Case No. 19-8021, 2019:

> Whichever way the bankruptcy court rules on the motion for relief from stay, an appeal is likely. At that point in time, the Debtor will have the opportunity to argue that he has an unfettered right to dismiss his case and the bankruptcy court should not have granted the motion to vacate the dismissal.

1

## I. Likelihood Debtor will prevail on appeal

### a. The U.S. Supreme Court has ruled that bankruptcy courts cannot modify and/or add words to existing bankruptcy statutes

The Supreme Court of the United States has explicitly prohibited the very conduct that the Court engaged in when it decided to improperly and retroactively place additional conditions on the previously-granted motion to dismiss the Chapter 13 case filed February 25, 2019 by the Debtor pursuant to 1307(b).

To aid in the discussion, the bankruptcy court for the Eastern District of Tennessee addressed in detail the absolute inability of a bankruptcy court to add words into bankruptcy statutes – See *In Re: Parker*, 1:16-bk-10539, 2016.

Highlights from *Parker*, starting at page 15 and quoting the U.S. Supreme Court in a finding that has been affirmed by the Sixth Circuit Court of Appeals in *Ellmann v. Baker (In re Baker)*, 791 F.3d 677 (6th Cir. 2015):

> The Supreme Court has since rejected the expansive application of a federal court's inherent powers or the authority provided by § 105(a) employed in *Jacobsen* and *Rosson*, cautioning that, "in exercising those statutory and inherent powers, a bankruptcy court may not contravene specific statutory provisions." *Law v. Siegel*, 134 S. Ct. 1188, 1194 (2014); accord, *Ellmann v. Baker* (In re Baker), 791 F.3d 677 (6th Cir. 2015). (emphasis added).

*Parker* also included this clear rebuke from the U.S. Supreme Court:

> It is hornbook law that § 105(a) "does not allow the bankruptcy court to override explicit mandates of other sections of the Bankruptcy Code." Section 105(a) confers authority to "carry out" the provisions of the Code, but it is quite impossible to do that by taking action that the Code prohibits... Id. (citations omitted – emphasis added).

Further from *Parker*:

> In the chapter 13 context, the Sixth Circuit has expressly recognized that "[a] debtor . . . has an **absolute right to dismiss a case** which was originally filed under Chapter 13 at any time. 11 U.S.C. § 1307(b)." *Liberty Nat'l Bank & Trust Co. V. Burba (In re Burba)*, 42 F.3d 1388 (6th Cir. 1994) (unpublished table decision), available at 1994 WL 709314, at *10. (emphasis added).

2

As such, this Court overlooked the specific direction given by the U.S. Supreme Court *after* the 2010 Sixth Circuit B.A.P. decision in *In Re Cusano* that this court relied on to add a 'bad faith' exception to Section 1307(b).

In so doing, this Court also ignored the precedent from the U.S. Supreme Court in *Law* and the Sixth Circuit Court of Appeals in both *Burba* and *Baker,* supra. See also *In Re: Burbridge*, US. Bankruptcy Court, N.D.NY 15-10839 2018, affirmed on appeal:

> Because the right of voluntary dismissal under § 1307(b) remains absolute, there is no basis on which to reverse the bankruptcy court's order denying Endurance's reconsideration or vacatur of the order approving Burbridge's voluntary dismissal of her petition.

The 'bad faith' finding of this court does not it give the right to modify existing bankruptcy statutes to add an exception for bad faith into the code at Section 1307(b) and use that exception as a basis to vacate the Debtor's properly-filed motion to dismiss under 1307(b).

Further, since the Debtor elected to have this appeal heard in Federal Court of Northern District of Ohio, the District Court is bound by the decisions of the Sixth Circuit Court of Appeals and the U.S. Supreme Court, and the BAP finding in *In Re Cusano* is irrelevant.

**b.     The 60(B) Motion was Incorrectly Granted**

Turning to the 60(B) motion itself that the Movant filed to vacate the dismissal of the Chapter 13, the District court will likely determine that fraud was <u>not</u> committed by the Debtor in obtaining the judgment to vacate.

As background, the Movant's claim for fraud pursuant to 60(b)(3) was recklessly predicated on its allegation that the Debtor has engaged in a 'mortgage fraud scheme'.

For purposes of Rule 60(b)(3), the Plaintiff must allege that the *judgment was <u>obtained</u>* by the Defendants through fraud. *Info–Hold* 538 F.3d at 457. However, mortgage fraud has no relation to the number of times a debtor files bankruptcy, according to the FBI.

3

Instead of engaging in a 'mortgage fraud scheme', the Debtor simply filed a Chapter 13 petition on February 19, 2019 and then filed a motion on February 25, 2019 under 1307(b) to dismiss the petition. There was no evidence of fraud in obtaining the judgment, nor was there any evidence that the Debtor ever engaged in a 'mortgage fraud scheme'.

Since the 1307(b) statute is clear that 'bad faith' is not a reason to deny dismissal of a petition, coupled with the fact that there was no evidence that the Debtor engaged in fraud of any type, the District Court will find that this Court errored when it granted the Movant's 60(B) motion.

**c.** **Key documents were not fully and fairly litigated in state court.**

In this Court's denial on November 1, 2019 of the Debtor's Motion to Alter or Amend its judgment, the Court blocked the Debtor's challenge to the 2017 Assignment of Mortgage and the newly-created allonge when it stated:

> His arguments all circle around one theme: US Bank is not entitled to pursue relief in this court and enforce the state court foreclosure judgment <u>because the documents linking US Bank to the original plaintiff/judgment creditor are deficient.   Debtor's problem is that he presented this argument to the state court and it was rejected.</u> (Emphasis added)

However, a glaring fact overlooked by this Court is that the *same* issues raised in this Court regarding the documents in question was either not raised at all in the state courts or was not *fairly and fully* litigated pursuant to *In Re Sweeney*, 276 B.R. 186 (6th Cir. BAP 2002) and *Isaacs v. DBI-ASG Coinvestor Fund, III, LLC (In re Isaacs)*, 895 F.3d 904 (6th Cir. 2018).

First, in a 2008 federal compliant involving the Debtor – *Smith v. Encore Credit Corp.* in the Northern District of Ohio Eastern Division 2008 No. 4:08 CV 1462 – the District Court rejected a defense of Rooker-Feldman/res judicata/issue preclusion for the same reasons it should be rejected here…neither the issues nor the parties are the *same*.  From *Smith*, supra:

> Issue preclusion cannot be invoked because *similar* issues were previously litigated and decided; rather, the *same* issue must have been actually litigated and decided. See *Thompson v. Wing*, 637 N.E.2d 917 (Ohio 1994); *Goodson v. McDonough Power Equip., Inc.*, 443 N.E.2d 978, 987 (Ohio 1983) ("Collateral estoppel precludes

4

relitigation only when the identical issue was actually decided in the former case.") (emphasis in the original).

In addition to the above issues not being the 'same issues' that were 'fully and fairly' litigated in the state court, both the Ohio Supreme Court and the Sixth Circuit Court of Appeals has held that the application of the principles of res judicata and collateral estoppel do not apply in every case. In *Castorr v. Brundage*, 674 F.2d 531, 536 (6th Cir.1982), the court said:

> We do not hold that the application of the principles of res judicata and collateral estoppel is mandatory in every case…We do not foreclose the possibility that certain § 1983 claims might not be barred by res judicata under proper circumstances.

The Ohio Supreme Court has recognized "that res judicata is not a shield to protect the blameworthy." *Davis v. Wal-Mart Stores, Inc.*, 93 Ohio St.3d 488, 491, 756 N.E.2d 657 (2001).

> Hence, the position has been taken that the doctrine of res judicata is to be applied in particular situations as fairness and justice require, and that it is not to be applied so rigidly as to defeat the ends of justice or so as to work an injustice. (Internal citations omitted.) Id.

Returning to the case at bar, the Debtor, in his objection to the Movant's motion for relief from automatic stay, properly raised fraud and other fatal flaws within the construction of the 2017 assignment of mortgage, rendering the document invalid. These issues were not 'fully and fairly' litigated at the state court. Despite the issues being similar, they were not the *same* pursuant to *Smith, Id.* Further, the defendants in the state court case are the Debtor and his wife, whereas in this Court the Debtor filed the petition by himself. As such, the parties are not the same as are involved in the state court case.

Here is the non-exhaustive list of additional issues that were either not raised in the state courts pursuant to *Sweeney*, nor needed to be raised pursuant to *Isaacs*, both supra.

**d.    The *validity* of the 2017 assignment of mortgage.**

In state court, the Defendants/Debtor introduced the 2017 Assignment of Mortgage themselves to prove that the timing of the statements – and the allegations made in the statements –

5

meant that the statements made by the Movant alleging a transfer of interest made previous to the date of execution of the 2017 assignment were false since the assignment was not *created* until months *after* the statements were made in state court filings.

The motion filed in state court by the Defendants/Debtor was not designed nor intended to litigate the issue of the *validity* of the document itself. The issue of the document's validity was not fully and fairly litigated, in fact, it was not litigated at all, and there was no reply entered by the Movant. (Exh. B, ECF No. 24-2)

Further, issue of the validity of the document itself was not necessary to the trial court or court of appeals since both had already made its decisions well before the document was ever introduced to into the case.

In denying the motion based on res judicata, its clear that the trial court was *only* addressing the issue of the <u>fraud upon the court</u> related to the <u>false statements</u>, not the issue of the validity of the assignment itself.

The clear evidenced of that fact is that since the 2017 assignment of mortgage had not been introduced in the state court until the Defendant's/Debtor included it with their motion of September 27, 2018, res judicata could not possibly apply to the document itself, and instead, <u>only</u> applied to the allegations of fraud regarding standing. In short, res judicata cannot apply to an entirely new issue, in this case, the validity of the document itself.

**e.** **Debtor has the right to challenge the 2017 Assignment of Mortgage**

As a preliminary matter, it's important to make a distinction between the 2017 AOM allegedly in favor of the Movant and the <u>2007</u> AOM in favor of LaSalle. The Debtor's objections pertain *only* to the 2017 AOM involving the Movant.

Numerous fatal defects exist within the AOM itself, and for the following reasons, the Debtor can challenge the 2017 assignment of mortgage.

6

First, the cases cited by the court regarding the issue have been superseded and/or clarified by the Sixth District Court of Appeals in *Slorp v. Lerner, Sampson & Rothfuss*, 587 Fed. Appx. 249 (6th Cir. 2014).

*Slorp* was a follow-up case to *Livonia Prop. Holdings, LLC v. 12840-12976 Farmington Rd. Holdings, LLC*, 399 F. App'x 97, 102 (6th Cir. 2010 (unpublished) and clarified the Sixth Circuit's position on the issue. *Livonia Properties* was one of the key cases relied on by this court to deny the Debtor's right to challenge the AOM. A succinct summary of *Slorp* is found in *In Re Mchugh*, 2015 U.S. Bankruptcy Court Northern District of Ohio, Western Division, Adv. Pro. No. 14-3140, Case No.: 14-31071 at page 6:

> "a non-party homeowner may challenge a putative assignment's validity on the basis that it was not effective to pass legal title to the putative assignee," *Id.* at 255 (citing *Conlin v. Mortg. Elec. Registration Sys.*, 714 F.3d 355, 361 (6th Cir. 2013) (stating that a third party may challenge an assignment if that challenge would render the assignment void)) and *Livonia Props. Holdings, LLC* , 399 Fed. Appx. at 102). Slorp's allegations regarding the fraudulent assignment would, if proven, render the assignment void such that Bank of America would not have held title at the time of the foreclosure. *See id.* at 255-56. The court thus found that Slorp had standing to assert his claims. *Id.*

The Debtor has clearly alleged that the 2017 assignment of mortgage was a fraudulent document and as such, was void and therefore not effective to pass legal title to the Movant – See objection filed July 25, 2019 at number 16-31.

In addition to the AOM being void for fraud in the construction of the document itself, the document is also void because there is nothing in Ohio case law or statutes that provides a mechanism to assign a mortgage post-judgment.

Here again, the cases cited by the court in support of post-judgment assignments do not address the specific issue raised by the Debtor which is the document's <u>inability to pass legal title post-judgment</u> for fraud and other reasons presented above, pursuant to *Slorp*, supra.

7

In *Stephens v. Nationstar Mortg. LLC (In re Stephens)*, 2016 WL 1050950, at *3 n.6 (Bankr. E.D. Pa. 2016), the issue did not involve a post-judgment assignment of mortgage and as a result, does not apply to the case at bar.

Further, in the case cited by *Stephens – Potoszny v. Aurora Loan Services*, LLC, 33 F.Supp. 3d 554, 556 n. 18 (E.D.Pa. 2014) – while at least mentioning post-judgment assignment of mortgages, it too is also inapplicable for two reasons: 1) the court denied the plaintiff's allegations that the post-judgment assignments were invalid and 2) the court did not pass judgment on the question of whether a post-judgment mortgage can be assigned at all.

Some states have determined that the mortgage is extinguished post-judgment along with the note, while others have held that the issue of what is 'merged' into the judgment is dependent on the terms of the mortgage – See *In Re Ballard*, U.S. Bankruptcy Court, N.D.OH, 07-61486.

In *Ballard,* this court came down on the side that the 'mortgagee's lien rights are not extinguished until the sale of the property has been consummated', but the issue of the 'mortgagee lien rights' is different from whether the mortgage itself lives on post-judgment and can therefore be assigned.

In the instant case, there is nothing contained within the Debtor's mortgage, nor in the fraudulent post-judgment assignment of mortgage, that addresses assignability of the judgment itself, nor is there any Ohio case law on the subject.

Other states appear ahead of Ohio in this area.  In both Florida and New Jersey, case law is 'well-established' that the *mortgage also merges into the judgment*.  While not controlling, Debtor believes there is persuasive value in *Nack Holdings, LLC v. Kalb*, 13 So.3d 92, 94 n. 2 (Fla. 3d DCA 2009), which held that there is no longer a mortgage on the subject property since it 'merged' into the final judgment.  At footnote 2, the Appellate Court said:

> This occurs as a matter of well-settled Florida law. The mortgage is merged into the judgment, is thereby extinguished, and "loses its identity." Whitehurst v. Camp, 699

8

So. 2d 679, 682 (Fla.1997) (quoting *Gilpen v. Bower*, 152 Fla. 733, 12 So. 2d 884, 885 (1943)).

Picking up on this same point, the Eleventh Circuit Court of Appeals said this in in *US. Bank National Association v. Larsen*, No. 17-15513 No. 0:16-cv-6191, 2018:

> Once a mortgage has merged into a judgment, no further action can be taken on the mortgage unless the foreclosure judgment is vacated. *Aluia v. Dyck-O'Neal, Inc.*, 205 So. 3d 768, 775 n.4 (Fla. 2d DCA 2016).

To be clear, the Debtor is not suggesting that the 'mortgagee lien rights' granted to the owner of the judgment are also extinguished. Nor is the Debtor suggesting that a there is no method to sell a judgment. In fact, we see both of those events in *Nack*, Id.

But a judgment is not a mortgage and vice versa.

In the one case cited by this court in its attempt to justify the notion that post-judgment mortgages can be assigned – *Harris v. Bayview Loan Serv. (In re Harris)*, 2016 WL 6649152 (Bankr. M.D.N.C. 2016) – that effort fails because North Carolina is a non-judicial foreclosure state and therefore a court-ordered 'judgment' following default is not entered and the mortgage survives.

It is also notable that the only case the court could find in support of its position on post-judgment assignments was from a non-judicial state 500 miles away. As such, the question may be one of first impression in Ohio.

In addition, the other cases cited by the court to justify a 'post-judgment' assignment are also inapposite to the case at bar because they too involve 'claims' versus judicially rendered judgments, IE a personal injury claim. Claims are not implicated by the merger of a judgment.

In the meantime, the Debtor maintains that there is no method in Ohio law to assign a mortgage post-judgment because the mortgage no longer exists for the obvious reason that the note it secures no longer exists, with both documents being merged into the final judgment.

9

Further, in none of the cases cited by the Court in its MOO of November 1, 2019 is the mortgagor alleging injury as a result of the assignment of mortgage.

But that is the exact opposite of the case at bar where a new fraudulent assignment is now being used in this court justify this court's decision. As such, injury <u>caused by the new assignment</u> is without debate.

Finally, at page 4 of its MOO of November 1, 2019, the court errors when it concludes that possession of 'either the note or the mortgage' gives a party standing to foreclose under Ohio law. In so holding, the court relies on *Clark v. Lender Processing Serv.*, 562 F. App'x 460, 466 (6th Cir. 2014) (unpublished) and notes that *Clark* cited *CitiMortgage, Inc. v. Patterson*, 984 N.E.2d 392, 397-98 (Ohio Ct.App.2012). However, the court stopped there and failed to notice that *CitiMortgage* cited *Fed. Home Loan Mortg. Corp. v. Schwartzwald*, 134 Ohio St.3d 13, 979 N.E.2d 1214, 1220 (2012)).

In turn, *Schwartzwald* has since been clarified by the Ohio Supreme Court in *Deutsche Bank Natl. Trust Co. v. Holden,* 147 Ohio St.3d 85, 2016-Ohio-4603 when it addressed the confusion created by its use of the word 'or' in the case. The court clarified its holding to state that it was simply referring to the fact that the bank held <u>neither</u> document. From *Schwartzwald*:

> {¶ 31} Parties and courts have seized upon that "failed to establish an interest in the note or mortgage" statement in Schwartzwald as establishing that a plaintiff in a foreclosure action must have an interest in either the note or the mortgage at the time of filing in order to establish standing. However, the "or" statement in Schwartzwald was a description of the particular facts in that case rather than a statement about the requisites of standing…

> {¶ 32} What Schwartzwald made clear was that the fundamental requirement of standing is that the party bringing the action must have a personal stake in the outcome of the controversy, i.e., that it must be the injured party. Id. at ¶ 21.

Returning to the case at bar, this court concludes its incorrect analysis of the requirements needed to foreclose under Ohio law by stating, "The assignment provides proof of US Bank's authority and interest in the mortgage and foreclosure litigation."

10

There are two significant flaws in that statement:

    1. The 2017 assignment is a fraudulent document that the <u>Debtor himself</u> submitted to the state trial court *after* all dispositive litigation and subsequent appeals had run. No court has ever determined that the assignment 'provides proof' of US Bank's authority to do anything, and if this court wanted to determine the validity of the AOM, an evidentiary hearing – as requested by the Debtor at the September 12, 2019 hearing – was required pursuant to bankruptcy rules.

    2. Even if, *arguendo*, US Bank possessed a legal assignment of mortgage – which it does not – that alone is not sufficient to execute a foreclosure under Ohio law pursuant to *Holden,* and therefore, the possession of only the mortgage itself is insufficient to seek relief from automatic stay and in rem relief – see also *Beneficial Mtge. of Ohio v. Jacobs*, 2002-Ohio-3162 – (The rule requires copies of the mortgage deeds and notes to be attached to complaints in foreclosure).

Once again, to be clear here, the Debtor is <u>not</u> arguing that that the Movant does not have authority to continue to prosecute in the state court the foreclosure judgment *granted to LaSalle* in 2007. That 'right' was granted by the Seventh District Court of Appeals when it found that the Movant is the 'trustee' of the trust, and therefore able to proceed on behalf of a third-party trust.

But merely being a 'trustee' in state court falls woefully short of the required standing in federal court where a claim of injury is a 'non-negotiable' requirement in order to have prudential standing. In its motion for relief, the Movant does not once claim injury, nor does it attempt to claim that its right to proceed <u>in this court</u> is based on any judgment.

Finally, when the Movant submitted the AOM on June 24, 2019 (Part 2 Exhibit D), the document was not 'self-authenticated' per Federal Rule of Evidence 902 and therefore, it is not

11

admissible in this case. A copy of the document – even though recorded – must still be certified, pursuant to Federal Rule of Evidence 902(4)(A)(B).

There is nothing in the record to indicate that the document filed by the Movant was 'certified as correct' pursuant to the above rule. Accordingly, the AOM cited by this court is not properly before the Court and therefore cannot be used as evidence in this case.

Further, since the AOM was executed by a power-of-attorney, Fed. Bank. R. 3001 and local rules require that the POA be submitted with the document. No POA was submitted.

Because of all of the above, it is clear that the Movant has no note, no judgment, no legal assignment of mortgage, and no security in Debtor's property and yet, this court improperly granted it relief from automatic stay and *in rem relief.*

g.    **The validity and materiality of the newly-created allonge**

The other key document beyond the AOM that the Debtor objected to in this case is the allonge that appeared out of nowhere and was included on June 24, 2019 along with the Movant's motion for relief from automatic stay.

In response to the Debtor's objection, the court said the allonge was 'immaterial'.

However, the Debtor believes the District Court will find that the issue of the allonge is in fact materially important for two key reasons.

First, its critical to note that the <u>Movant itself is the one that cites the 'materiality'</u> of the allonge when it cited the allonge as the very document that gave it authority to act in this case and NOT the judgment itself.

Here is the relevant section from page 4 of the Movant's filing for relief from stay which states:

7. The Note was transferred, as evidenced by the following:

a. If the Collateral is real estate…:

12

ii. Under Uniform Commercial Code § 3-203(a) as applicable under state law in effect where the property is located from the:

…to U.S. Bank National Association, as Trustee, successor interest to Bank of America, National Association as Trustee as successor by merger to LaSalle Bank National Association, as Trustee for certificateholders of Bear Stearns Asset Backed Securities I LLC Asset Backed Certificates, Series 2004-HE5 **as evidenced by the allonge attached to this Motion as Exhibit A. (emphasis added).**

Clearly, the Movant claimed that the note is its source of authority by virtue of the allonge and not the judgment granted to LaSalle in 2007.

In fact, in section iii right below the statement above, the Movant then fails to claim or affirm that the judgment issued to LaSalle Bank in is involved at all. Here is a screen shot of section 7(a)(iii) from the Movant's motion June 24, 2019:

iii. A court has already determined that Movant has the ability to enforce the Note and Security Agreement with a judgment dated <INSERT DATE OF JUDGMENT> in the <INSERT NAME OF COURT>. A copy of the judgment is attached as Exhibit <__>.

As can be plainly seen, the Movant did not claim that its authority to act in this court was based on a judgment. It not only failed to fill in the information required on the court-mandated form, but it also did not attach the judgment to its motion or related exhibits as required.

In fact, the only reference that the Debtor could find in the Movant's motion for relief to any judgment was when the Movant represented falsely that the judgment granted to LaSalle Bank in 2007 was instead granted to the movant.

Here is a screenshot of that false statement from page 7 of its June 24, 2019 motion:

a) Debtor defaulted on the loan in 2005. Movant initiated foreclosure in state court and obtained judgment on January 12, 2007. A Sheriff's sale was set for August 7, 2007.

13

However, the record of the case is that LaSalle Bank National Association ("LaSalle") is the party that initiated the foreclosure action and LaSalle is the party that obtained the judgment (see footnote 1 at the bottom of page 4 of Nov. 1 2019 MOO). U.S. Bank did not enter the case until June 3, 2016, nearly *10 years after* the judgment was issued.

Since the movant did not – and cannot – claim the judgment as authority for its motion for relief in this court, Debtor believes and has alleged that the allonge was fraudulently created within the past year in a brazen and illegal effort to bridge the gap between the state court judgment issued to LaSalle and the Movant attempting to act in this court in its own name.

Second, the issue of the *validity* of the allonge was not 'fully and fairly' litigated in the state court as evidenced by the fact that the allonge did not appear in this case until June 24, 2019, well over a year after the last dispositive state court ruling in this case.

Further, since the allonge was executed by a power-of-attorney, Fed. Bank. R. 3001 and local rules require that the POA be submitted with the document. No POA was submitted.

It is simply and demonstrably incorrect to hold that the allonge is 'immaterial' to this case and that the state court already rejected those claims by the Debtor. Once the District Court confirms materiality of the allonge and that the allonge was not raised in the state court, the District court is also likely to find that it too is a fraudulent document since the 'assignor' – Lasalle – ceased to exist more than 10 years ago. Further, the allonge had a number of other fatal flaws that are too numerous to mention here, but are detailed in Debtor's objection of July 25, 2019 and re-alleged in his motion to alter judgment.

h.      **The Debtor is <u>not</u> seeking to overturn the foreclosure judgment**

As a matter of review of 15 years of litigation, here are the base facts that have been determined by the state courts:

14

1. LaSalle Bank was granted by the Mahoning County Court of Common Pleas a summary judgment and decree in foreclosure on January 12, 2007 in 2005-cv-3869.

2. The Seventh District Court of Appeals determined on June 21, 2018 – 2017-MA-0093 – that U.S. Bank had the right to prosecute the judgment issued to LaSalle because it was the new trustee.

Nowhere in that short list of adjudicated facts is any mention of an allonge, nor of the 2017 assignment of mortgage. The Debtor is not challenging any findings of the state courts.

The issues already determined by the state courts have nothing to do with the fact that the Movant does not have a 'pecuniary' interest in the note and mortgage (nor judgment), does not possess 'prudential standing', nor is the creditor, nor that it owns a valid security interest in the Debtor's property.

The issues raised now by the Debtor are not 'inextricably intertwined' in the foreclosure case and a finding by this Court in favor of the Debtor on any one – or even all – of the issues the Debtor is now raising would not amount to an 'impermissible overreach' by this Court.

There is no reason, for example, why this court could not simultaneously take the position that the Movant failed to meet its burden of proof that it was entitled to relief from automatic stay, while at the same time leaving the state court judgment perfectly intact.

That 'dual' position in this case is made possible because the Seventh District Court of Appeals has already determined that the Movant, acting as trustee, is entitled to execute the underlying foreclosure despite acting on behalf of a third party (the trust), but at the same time, the Ninth Circuit Court of Appeals has determined that a non-injured party cannot prevail in a motion for relief from stay – See *Veal v. Am. Home Mortg. Servicing, Inc. (In re Veal)*, 450 B.R. 897; 2011 Bankr. LEXIS 2359. See also *Coyne v. Am. Tobacco Co.,* 183 F.3d 488, 494 (6th Cir. 1999) (quoting *Warth v. Seldin*, 422 14-03140-maw U.S. 490, 499 (1975)).

15

The Court could rule tomorrow that the 2017 assignment of mortgage and/or the allonge is not valid and that ruling would have *zero* impact on the existing state court case, which is in line with *Isaacs*, supra.

### i.    Due process and equal protection rights have been violated

Ironically, this court itself makes the case for the Debtor that the process he has been put through is unfair and violates due process and equal protection under law.

*In Re McFadden*, case no. 12-60420 decided in this court on July 19, 2012, the court was addressing the standards that apply to *pro se* litigants.  In that case, the court noted that the 'bare' allegations made by a pro se creditor resulted in untenable situation for the Debtor because the Creditor filed a motion that was "completely devoid of any reference to the bankruptcy code or rules, nor does it contain any citation to any legal authority."

The similarity to the case at bar is that in reaction to the Debtor's objection to Movant's motion for relief from automatic stay, the Movant filed a one paragraph reply that also was "completely devoid of any reference to the bankruptcy code or rules", and it did not "contain any citation to any legal authority."  Further, the Movant did not reply at all to multiple related Motions filed by the Debtor June 14, 2019 and October 10, 2019.

The result for both the Debtor in *McFadden* and the Debtor in this case is the same.  While not acting *pro se*, the Movant's terse reply to the Debtors objection, and lack of reply to his other motions have the same effect.  Here is how this court explained the issue in *McFadden*:

> Requiring a *pro se* litigant to meet basic pleading standards protects an opposing party from the unknown. Without some restraint…an opposing party can be forced to guess at the *pro se's* position and raise defenses in the dark. This does not meet any notion of due process, fair play or justice.…
>
> …it is beyond the scope of this court's duties to create claims or make legal arguments for a *pro se* litigant…To do so would…transform the district court from its legitimate advisory role to the improper role of an advocate seeking out the strongest arguments and most successful strategies for a party." (emphasis added).

16

And yet, for months, the court has forced this Debtor to proceed completely in the dark, has denied evidentiary hearings that should have been granted and has short-circuited the hearings that were held with introductions from the bench that indicated the court either had all the information it needed – see transcript of April 25, 2019 – or that it wasn't fully prepared in the Final hearing on September 12, 2019 to address the nuances of the case, stating, "…I'll have to confess, I'm going to have to re-read what he submitted…", see transcript.

Further, by evidence of several multi-page Opinions issued by the court against the Debtor with no input from the Movant, the court has crossed the line and become an 'advocate seeking out the strongest arguments and most successful strategies" for the Movant.

Perhaps worse, the arguments raised by the court are repeatedly based on case law that is outdated or not applicable.

As evidence of bias and prejudice against the Debtor, all the dozen or more outdated or inapplicable case laws cited by the court and related legal positions based on those cites favor the Movant and work against the Debtor.

Had the same arguments been made by the Movant, the Debtor could have corrected the errors sooner than at the appeal stage when the sale of his home is pending and the court could then have performed its proper role of deciding which side was right.

Instead, the court has gone from umpire to pitcher, which does not lead to "justice or fair play". As a result, the Debtors due process and equal protection under law rights have been trampled in direct violation of his United States Constitutional due process rights and Ohio Constitutional Inalienable Rights. U.S. Const. am.14; Section 1.01, Art. I, Ohio Constitution.

**II.    Likelihood that the moving party will be irreparably harmed absent a stay**

If the Stay is not permitted, the Debtor will suffer irreparable harm due to the forced sale of his home.  An Order of sale in the underlying case was issued to the Mahoning County Sheriff on

17

November 17, 2019, making the sale imminent. That the state court has authorized the sale does not change the fact that denying the stay pending appeal will nonetheless cause the debtor irreparable harm. But for improper actions of this court, the Debtor would be able to either stop the sale through another Chapter 13 filing or, in the alternative, the sale would not be allowed to occur if the automatic stay had not been lifted.

Nonetheless, in its denial of the first stay pending appeal filed by the Debtor, the Court reasoned that the Debtor is not subject to 'irreparable harm' because, "The court cannot find irreparable harm will occur by restricting Debtor's access to the bankruptcy system when he cannot avail himself of its relief."

However, that earlier conclusion reached on this point are based entirely on impermissible assumptions, three-year old income data pulled from the Debtor's 2017 Chapter 13 filing, unknown balances on debt that has been the subject of federal mortgage bailouts and insurance payouts, and clear uncertainty as to the current owner of the judgment debt.

Assuming the court ultimately determines that the Movant does not possess a valid claim against the Debtor or his home, the Debtor will be able to put forth a plan in this court that will provide a 100% payout of his relatively small remaining debt. The Debtor should not have to file an Adversary Proceeding to answer the simple question as to whether or not the Movant is a secured creditor in the case. Not only is the 2017 AOM submitted by the Movant fraudulent, it was not properly recorded pursuant to Ohio Revised Code 1337.04 since the POA was not recorded prior. Given both facts, the Movant does not have a secured claim.

Further, the entity that does have a secured claim – LaSalle – ceased to exist more than 10 years ago – and as a result, it too is unable to file a claim of its own – see Debtor's objection of July 25, 2019. Since LaSalle is not before this court, the Debtor is not asking that it strip LaSalle's lien,

18

which the Debtor will do through a separate action after the Movant is denied, see *In Re: Pinnock-16-23508 NY*. At that point, the Debtor will be able to qualify for a successful Chap. 13 plan.

Further, given the clear evidence of fraudulent documents and false statements in this case, and the other issues detailed herein, it would be judicial misconduct for the court to allow the sale of a family's home under the circumstances. To do so would create both manifest injustice and irreparable harm.

Accordingly, the Debtor not only faces impending and substantial injury, but the ability to repair that damage is non-existent if his home is sold during the pendency of the appeal as a direct result of a series of blatantly incorrect and plainly biased decisions rendered by this court.

## III.   Prospective harm to others

The Court said in its earlier denial of stay that 'U.S. Bank suffers harm everyday', but its position is not supported by evidence. In fact, the evidence shows the opposite is true. As a third-party debt collector, U.S. Bank presumably <u>makes money</u> everyday from this case.

In a court filing several months ago in the Sixth District Court of Appeals in a FDCPA case involving the Smiths and the Movant and in response to the Smiths alleging that the Movant failed to properly identify its role on a financial disclosure form, the Movant said this in *Ronald J. Smith v. U.S. Bank National Association, et al,* 18-3963, 2017 at page 6:

> U.S. Bank NA, in its capacity as the trustee, <u>has no financial interest in this litigation, because "a trustee, who manages property on behalf of a trust, does not have a personal interest in the trust's assets."</u> (emphasis added).

Simply put, the Movant has not established – nor even alleged – that it is suffering any loss or injury in this case – in fact, it has admitted the opposite. There is no evidence Movant paid anything of value for the debt, note, mortgage. The court errored when it assumed otherwise.

## IV.   The public interest

19

The Debtor believes this case presents a substantial public interest because the integrity of the bankruptcy system is indeed negatively impacted when hired debt collectors – which is all U.S. Bank is in this case – are allowed to enter the Court with phony documents, incomplete filings, false statements and self-serving words that all seem to suggest they are the Creditor, but in fact are only hired to foreclose on the property on behalf of some other, unidentified third-party actor.

Accordingly, the Movant, by its' deceptive and illegal actions, is indeed negatively impacting the integrity of the bankruptcy system because thousands of homeowners lose their homes every year to similar practices despite seeking protection from federal bankruptcy Courts.

In the case at bar, these illegal acts, coupled with a lack of due process and equal protection under law, have created an untenable situation where the Debtor was first improperly forced back into bankruptcy, then improperly stripped of the protections afforded in bankruptcy by the granting of a motion to a party that has no right to be in the court and who should face sanctions instead of relief, see *In Re Wells*, 407 B.R. 873 (Bankr. N.D. Ohio 2009).

As such, there is in fact a great deal of public interest and impact because if this type of irreparable harm could be done to one citizen, which will result in the loss of the Debtor's home to a stranger in this case, it can be done to all citizens.

## CONCLUSION

For the reasons contained herein, the Debtor prays that this Court **Grants** the Debtor's Motion for Stay Pending Appeal and for any other relief as may be appropriate.

Respectfully submitted,

Ronald J Smith, *Pro Se*
1625 Gully Top Lane
Canfield, OH 44406
Ronald1625@hotmail.com
330-207-0705

20

## Certificate of Service

I certify that a copy of the foregoing was served by First Class U.S. Mail on December 12, 2019 upon:

Stephen R. Franks (0075345)
Manley Deas Kochalski LLC
P.O. Box 165028
Columbus, OH 43216-5028
614-220-5611
Attorney for Movant

Michael A. Gallo
Chapter 13 Trustee
5048 Belmont Avenue
Youngstown, OH 44505

_____
Ronald J. Smith
Pro se