UNITED STATES BANKRUPTCY COURT
NORTHER DISTRICT OF OHIO
EASTERN DIVISION

FILED
U.S. BANKRUPTCY COURT
2020 JAN -7 PM 2: 31
NORTHERN DISTRICT OF OHIO
YOUNGSTOWN

In re: )
)
) Case No.: 19-40227
**Ronald Joseph Smith** )
)
**Debtor** )
) Chapter 13
)
) **Judge Russ Kendig**
)

# DEBTOR'S EXPEDITED MOTION TO ALTER OR AMEND JUDGMENT

Debtor Ronald J. Smith hereby moves this Honorable Court, pursuant to Rule 59(e) of the Federal Rules of Civil Procedure (Rule 9023 of the Fed. Bankruptcy Code), to alter or amend its judgment signed on December 24, 2019 which denied the Debtor's expedited motion to stay proceedings pending appeal.

### Memorandum in Support

The Court's decision to deny the Debtor's expedited motion for stay pending appeal is predicated upon a series of errors of law and mistakes of facts that if allowed to stand, will lead to 'manifest injustice' in this case.

**Standard of Relief under Rule 59(e)**

A Motion to reconsider under Rule 59(e) should be granted to correct "(1) a clear error of law; (2) newly discovered evidence; (3) an intervening change in controlling law; or (4) a need to prevent manifest injustice." See *FDIC v. Commonwealth Land Title Ins. Co.*, 2013 WL 5215884, at *1 (N.D. Ohio Sept 13, 2013) (citing *Intera Corp. v. Henderson*, 428 F.3d 606, 620 (6th Cir. 2005).

1

This request specifically is being made under sections (1) a clear error of law and (4) a need to prevent manifest injustice.

## Clear Errors of Law

**1. The Court Errored When it Determined That the Right to Dismiss a Chapter 13 Pursuant to Rule 1307(b) is not Absolute**

Debtor believes and hereby submits for the following reasons that there is confusion on the issue of the 'absolute right to dismiss' a Chapter 13 petition pursuant to a motion filed under B.R. 1307(b):

**A.** The meaning and definition of 'absolute right to dismiss' has changed over the past 20 years, most significantly following the U.S. Supreme Court's decision in *Law v. Siegel*, 571 U.S. 415, 421 (2014).

Pre-*Siegel*, the term 'absolute right to dismiss' typically addressed the question as to whether the court was required to dismiss a petition pursuant to 1307(b) at all in the face of 'bad faith' or 'misconduct'.

But after *Siegel*, the term "absolute right to dismiss' morphed into meaning whether a court could impose conditions – especially when intertwined with a pending motion to convert – as part of an element of a dismissal.

In any event, what is clear today is that there is no case law post-*Siegel* that holds onto the outdated notion that the court has authority to flatly deny the right to dismiss a Chapter 13 petition pursuant to section 1307(b) for bad faith, misconduct, or for any other reason.

In the Sixth Circuit, the Appeals Court has implemented the clear direction provided by the Supreme Court in *Siegel* when it determined that 'bad faith' and 'misconduct' cannot be read into statutes regarding exemptions.

In *Ellmann v. Baker (In re Baker)*, 791 F.3d 677 the Appeals Court said:

2

> The Supreme Court further determined that bankruptcy courts do not have "discretion to grant or withhold exemptions based on whatever considerations they deem appropriate" because the Bankruptcy Code "sets forth a number of carefully calibrated exceptions and limitations, some of which relate to the debtor's misconduct." *Id.* at 1196. Thus, "[t]he Code's meticulous—not to say mind-numbingly detailed enumeration of exemptions and exceptions to those exemptions confirms that courts are not authorized to create additional exceptions." *Id.* Accordingly, the Supreme Court concluded that the Code does not confer "a general, equitable power in bankruptcy courts to deny exemptions based on a debtor's bad faith conduct" or "the debtor's fraudulent concealment of [an] asset alleged to be exempt." *Id.*
>
> <u>Applying these principles here</u>, it is clear that *Siegel* prohibits the bankruptcy court from disallowing the debtors' claimed exemptions because of their alleged bad faith and fraudulent conduct. While *Lucius* previously held that bankruptcy courts may use their equitable powers to sanction a debtor's misconduct by disallowing exemptions in property concealed from the trustee, the Supreme Court's superseding decision unambiguously abrogates their ability to do so. (emphasis added).

While the Sixth Circuit has not specifically ruled on the issue of a Debtor's absolute right to dismiss pursuant to section 1307(b), it appears inconceivable that it would allow an exception for 'bad faith' or 'misconduct' to deny that right if faced with the question in a 1307(b) context.

This is made even more so with the Sixth Circuit's comment in *Liberty Nat'l Bank & Tr. Co. v. Burba (In re Burba)* – even in dictum – that the right to dismiss under section 1307(b) remains 'absolute'.

The only issue that remains 'unresolved' today in the current 1307(b) landscape is whether or not courts can add conditions into an otherwise properly-filed motion to dismiss.

For the most recent, robust and concise insights on the issues above, the Debtor submits the following from *In re Marinari*, Civil Action No. 17-00922 (E.D. Pa. Oct. 11, 2019). This case stemmed from *In re Marinari* 596 B.R. 809 (Bankr. E.D. Pa. 2019) as the result of an appeal from an

3

adversary proceeding filed in that case and was <u>decided just three months ago</u>. For clarity, the Debtor will refer to the appeal as *Marinari II* and the base case as *Marinari I*.

From *Marinari II*:

> Section 1307(b) says that a "court shall dismiss" a Chapter 13 proceeding "[o]n request of the debtor at any time, if the case has not been converted." Some courts read that language as granting "a debtor an 'absolute' right" to dismiss her Chapter 13 case. *In re Ross*, 858 F.3d at 754. That is, "if a debtor requests dismissal, then the court must dismiss; no exceptions." *Id.* Other courts read § 1307(b) "to contain an exception that permits a bankruptcy court to delay ruling on a bad faith debtor's request for dismissal and instead first address a creditor's competing motion to dismiss the case or convert it to Chapter 7." *Id.* Neither the Supreme Court nor the Third Circuit has taken up the issue. See *id.*
>
> The Court agrees with the Bankruptcy Court that Marinari has an absolute right to a voluntary dismissal under § 1307(b). See R., Vol. VIII, at 62. Statutory interpretation begins and ends with what the text, taken in context, "says and fairly implies." Antonin Scalia & Bryan A. Garner, *Reading Law: The Interpretation of Legal Texts* 16 (2012); see also *United States v. Davis*, 588 U.S. ----, 139 S. Ct. 2319, 2327 (2019). Section 1307(b) says that a "court *shall* dismiss" the case on the debtor's request "if the case has not been converted." 11 U.S.C. § 1307(b) (emphasis added). By using "shall" and "if"—rather than "only if"—Congress made dismissal mandatory unless the case has been converted. See *Lexecon Inc. v. Milberg Weiss Bershad Hynes & Lerach*, 523 U.S. 26, 35 (1998) (noting that "shall" "creates an obligation impervious to judicial discretion"); *In re Forever Green Athletic Fields, Inc.*, 804 F.3d 328, 334 (3d Cir. 2015) (explaining that "shall" combined with "only if"—as opposed to just "if"—creates "a necessary but not sufficient condition"). According to its plain meaning, § 1307(b) gives debtors an absolute right to dismiss their unconverted Chapter 13 proceedings.
>
> Section 1307(b)'s context reinforces its plain meaning. Congress wrote an explicit exception from mandatory dismissal for cases that had already been converted. That exception counsels against reading in an exception for a debtor's bad faith or for cases with pending conversion motions. Cf. *United States v. Brockamp*, 519 U.S. 347, 352 (1997) (warning against reading "unmentioned, open-ended, 'equitable exceptions'" into a statute with explicit exceptions). So does Congress's declaration that "[a]ny waiver of the right to dismiss under [§ 1307(b)] is unenforceable." 11 U.S.C. § 1307(b). Reading § 1307(b) as conferring debtors an absolute right to dismissal also

4

furthers Chapter 13's role as "[a] wholly voluntary alternative to Chapter 7." *Harris v. Viegelhan*, 575 U.S. ----, 135 S. Ct. 1829, 1835 (2015).

Abiding by § 1307(b)'s text does not make Chapter 13 a haven for unscrupulous debtors. In dismissing a Chapter 13 proceeding, a court does not discharge the debtor's debts; it restores the pre-bankruptcy status quo, and creditors may use other avenues to collect on the debt. And before the debtor's case is dismissed, creditors may move to convert the proceeding to one under Chapter 7. See 11 U.S.C. § 1307(c). Even after dismissal, creditors can initiate an involuntary Chapter 7 case against the debtor. See *id.* § 303. Although a debtor's right to dismiss under § 1307(b) is absolute, it need not be unconditional. Courts may, for example, impose appropriate filing restrictions when dismissing the debtor's case, see *In re Ross*, 858 F.3d at 785-86, or impose sanctions for bad-faith conduct, see *In re Schaefer Salt Recovery, Inc.*, 542 F.3d 90, 98-102 (3d Cir. 2008); 11 U.S.C. § 105. An absolute right to dismissal under § 1307(b) neither upsets "the equitable nature of bankruptcy" nor prohibits bankruptcy courts from "patrol[ling] the border between good- and bad-faith filings." *In re Forever Green Athletic Fields*, 804 F.3d at 334. In any event, a bankruptcy court's equitable powers "may not convene specific statutory provisions," such as § 1307(b). *Law v. Siegel*, 571 U.S. 415, 421 (2014).

*Marrama v. Citizens Bank of Massachusetts*, 549 U.S. 365 (2007), does not compel a different conclusion. The provision there said a "debtor may convert a case under [Chapter 7] to a case under [Chapter 13]" so long as he is "a debtor under [Chapter 13]." 11 U.S.C. § 706. The question was whether this right was absolute or included a bad-faith exception. Two main considerations led the Supreme Court to hold that a debtor's bad faith forfeited his right to convert his Chapter 7 proceeding to a one under Chapter 13. See Marrama, 549 U.S. at 371. First, the Court reasoned that, because only "honest" debtors may use Chapter 13, one who acts in bad faith is not "a debtor" under that chapter and thus ineligible for conversion. *Id.* at 374. Second, the Court noted that an absolute right to convert created a "procedural anomaly" obliging courts to convert bad-faith proceedings to Chapter 13 only to then dismiss or return it to Chapter 7 under § 1307(c). *Id.* at 368.

This case is different. Section 1307(b) says a "court *shall* dismiss" a Chapter 13 case on the debtor's request. 11 U.S.C. § 1307(b) (emphasis added). Section 706, by contrast, says a "debtor *may* convert." Id. § 706 (emphasis added). *Marrama* teaches that a debtor's bad faith precludes her from proceeding under Chapter 13.

5

> See 549 U.S. at 374. But here a debtor is trying to dismiss her Chapter 13 case, not gain entry to that chapter, so giving her an absolute right to do so does not undermine Chapter 13's purposes. Cf. *In re Forever Green Athletic Fields,* 804 F.3d at 335 (noting that an involuntary Chapter 7 proceeding "is an extreme remedy" and allowing "dismissal of bad-faith filings" alleviates the dangers for abuse). Nor does an absolute right to dismiss under § 1307(b) create a procedural anomaly.
>
> Section 1307(b)'s text, taken in context, compels bankruptcy courts to dismiss a debtor's Chapter 13 case on request. This command does not undermine the equitable nature of bankruptcy; courts may still sanction bad-faith debtors or impose conditions when dismissing an abusive filing. The Court accordingly affirms the Bankruptcy Court's order dismissing Marinari's Chapter 13 case as § 1307(b) compelled.

    **B.**    All the cases cited by this court to justify its belief that a dismissal under 1307(b) is 'not absolute' are from the 'pre-*Siegel* era' and, significantly, all include allegations of fraud and misconduct <u>during the pendency</u> of the relevant case (See *In re McCraney*, 172 B.R. 868 (N.D. Ohio 1993); *In re Cusano*, 431 B.R. 726 (B.A.P. 6th Cir. 2010); *In re Haddad*, 572 B.R. 661 (Bankr. E.D. Mich. 2017). None of those conditions apply to the case at bar and therefore, none are controlling in this case.

    **C.**    The one post-Siegel exception that this court cites is the 2019 federal court decision in *Marinari I.* In its decision of June 5, 2019, this court refers to *Marinari I* in support of its belief that courts are 'split' on the issue of whether or not the right to dismiss is 'absolute'. However, critically missing in that analysis is that the 'split' the *Marinari I* court said was unresolved involved cases that all included a pending motion to convert to a Chapter 7 (*In re Jacobsen*, 609 F.3d at 663 ; *In re Rosson*, 545 F.3d at 774-75 ; *In re Molitor*, 76 F.3d at 220.), and again, all those cases were decided pre-*Seigel.* Notably, the *Marini I* court denied the creditor's request to vacate the dismissal.

Simply stated *Marini I* <u>does not</u> stand for the proposition that courts are 'split' on the issue of whether a post-*Siegel* case can be outright dismissed for bad faith or misconduct.

In fact, the opposite is true.

6

The Debtor is unable to find – and neither the court nor the movant provided – any post-*Siegel* cases to support the court's determination that the right to dismiss under 1307(b) is not absolute.

Therefore, it was a clear error of law for the court to determine that the right to dismiss a petition pursuant to 1307(b) is not 'absolute' when the current, post-*Siegel* meaning of the term is properly applied and setting aside possible exceptions to impose conditions as part of a dismissal.

**2.     Rule 60B is Not Applicable in This Case**

Given the above and following Supreme Court direction in *Siegel*, Fed. R. 60B is not applicable to the case at bar because the motion contravenes congressional intent regarding section 1307(b). As background, the movant filed its original motion of March 24, 2019 under Civ. R. 60(b)(3)(6) without referencing B.R. 9024. The difference is significant, and more than a simple oversight because B.R. Rule 9024 functions differently than a motion 60B.

In short, there is a reason congress allowed the U.S. Supreme Court to develop its own set of rules that would apply exclusively to bankruptcy law. In most instances, the bankruptcy rules reflect the federal rules of procedure. However, there are important and critical distinctions in some instances. The court overlooked those differences in the case at bar.

In a 2009 article in the *Norton Journal of Bankruptcy Law and Practice*, author, attorney and noted bankruptcy expert Patrick Birney points out that in a bankruptcy context, a motion <u>60B cannot be used to contravene the expressed intent of statute</u>. As Atty. Birney correctly notes, bankruptcy law is different than federal law, and Congress took specific action in the Bankruptcy Reform Act of 1978 to ensure that bankruptcy rules <u>do not</u> supersede congressional statutes.

From the article, which can be found at: http://www.rc.com/upload/Birney-Bankruptcy-Rule-9024-Paper-Tiger-6_2009.pdf:

> Unlike the application of Rule 60 in a case pending in the U.S. district
> courts, Rule 9024 seemingly cannot provide a party with a substantive
> remedy that has been previously foreclosed by a provision of the Bankruptcy Code.
> This distinction is based on section 2075 of Title 28 (the Bankruptcy
> Rules Enabling Act), which was modified to ensure that the Bankruptcy
> Rules do not supersede the statutory provisions of the Bankruptcy Code.
> Instead, Bankruptcy Rules merely provide a mechanism by which the
> Bankruptcy Code's provisions are implemented and effectuated. Thus
> if a substantive provision of the Bankruptcy Code expressly foreclosed the
> relief that a party was seeking, Rule 60 could not trump that foreclosure.

The relevant section of section 2075 of Title 28 reads:

> The Supreme Court shall have the power to prescribe by general rules,
> the forms of process, writs, pleadings, and motions, and the practice and procedure in
> cases under title 11.
>
> Such <u>rules shall not abridge, enlarge, or modify any substantive right</u>.
> (emphasis added).

Returning to the case at bar, and as an example, one case the Debtor is able to find where a motion 60B was successfully employed to vacate a judgment in bankruptcy – and that was decided after the Bankruptcy Reform Act of 1978 – is *In re Boroff*, 189 B.R. 53, 56 (D. Vt. 1995). But <u>*Boroff* aligns with the 1978 Act</u> because the motion for relief was filed within 180 days of the confirmation of a Chapter 13 plan and the relevant statute regarding confirmation of plans allows up to 180 days for 'parties in interest' to object. Therefore, the 60B motion in *Boroff* did not contravene bankruptcy statute.

As another example, and as applied to the case at bar, had the movant's motion been styled as a Motion 60(b)(3) for say misrepresenting that his case had not been converted under section 706, 1112, or 1208, then 60B would be applicable because the result of the court granting such a motion would not contravene statute.

Further, its notable that none of the cases cited by the court were predicated on a 60B filing. Instead, all were based on a filing pursuant to 59(e) or made *sua sponte* by the court itself.

Taken together and applied to the case at bar, we see the following facts emerge:

8

1. The U.S. Supreme Court in *Siegel*, supra, which was affirmed by the Sixth Circuit of Appeals in *Baker*, supra, stands for the proposition that no words or conditions can be added to statutes that appear in the bankruptcy code.

2. Congress, through the Bankruptcy Reform Act of 1978, has stipulated that the Supreme Court "shall not abridge, enlarge, or modify any substantive right" provided by the Bankruptcy Code.

3. Bankruptcy Code 1307(b) could not be more clear when it states:

> On request of the debtor at any time, if the case has not been converted under section 706, 1112, or 1208 of this title, the court shall dismiss a case under this chapter. Any waiver of the right to dismiss under this subsection is unenforceable.

As such, a motion filed under Fed.R. 60B to vacate an order granting the dismissal of a petition properly granted pursuant to section 1307(b) that does not specifically – and exclusively – challenge a misrepresentation related to section 706, 1112, or 1208 of title 1307 is void *ab initio* because it would directly contravene the plain language contained within the statute. The court clearly errored when it determined that a 60B motion could be used to supersede and contravene U.S. Code by adding exceptions for bad faith and/or misconduct.

The Debtor first tried to raise this issue in his motion to alter or amend a judgment filed on June 14, 2019 when he wrote, "Further, the motion from the Creditor was filed as a Motion 59(e), which has a much different – and lower standard of proof – than does a motion 60(B)", but the issue was overlooked or ignored by the court (ECF #36 at page 29).

### 3. Even if 60B is Applicable, Which its not, the Movant Failed to Make its Case

In *Jordan v. Paccar, Inc.*, 1996 WL 528950, *6 (6th Cir. 1996) (unpublished)) the Sixth Circuit Court of Appeals clearly enunciated the elements required under the 'fraud' and 'misconduct' label contained within a motion 60(b)(3). In *Paccar*, the Court said:

9

> The opinions the district court relied on reject the idea that the text of Rule 60(b)(3) requires the moving party to demonstrate some purposeful "bad act" on the part of the adverse party. The language of the rule does not support such a construction, however. Fraud cannot be unintentional, and the use of the prefix "mis" in both "misrepresentation" and "misconduct" also suggests that the moving party under the rule must show that the adverse party committed a deliberate act <u>that adversely impacted the fairness of the relevant legal proceeding in question</u>. (emphasis added).

Further from *Paccar,* and noting that the three words within 60(b)(3) must be taken together, the Sixth Circuit said:

> As discussed above, the primary connotation of each of the words in Rule 60(b)(3) suggests a requirement of some odious behavior on the part of the non-moving party.

And also from *Paccar:*

> [Rule 60(b)(3) ] is aimed at judgments which were unfairly obtained, not at those which are factually incorrect. *Rozier*, 573 F.2d at 1339.

In the case at bar, there is zero allegation or even a whiff of facts to suggest that the Debtor engaged in a 'deliberate act that adversely impacted the fairness of the relevant legal proceeding in question' or engaged in 'odious behavior' <u>in order to 'unfairly obtain' dismissal</u> of his Chapter 13 petition.

In fact, the only issue that may have caused the movant to be 'adversely impacted' in the underlying dismissal was the fact that the court granted the Debtor's motion to dismiss the case literally within two *hours* after it was filed on February 25, 2019. But that fact is hardly the fault of the Debtor and instead, reflects the plain reality that the court initially recognized that a motion to dismiss under section 1307(b) 'shall be dismissed', and in fact said as much in its June 5, 2019 Order.

Since almost all litigation involves some sort of underlying 'misconduct' on the part of one party or another, its clear that the only 'misconduct' referred to in section 60(b)(3) is misconduct

10

related to obtaining the judgment itself. Without that restriction, almost every case could qualify for post-judgment tinkering under a generalized heading of 'misconduct'. The Sixth Circuit has in *Paccar* soundly rejected that concept since it works against the goal of finality of judgments.

As such, whether under the heading of a 'mortgage fraud scheme' as first alleged recklessly by the movant, or under the heading of 'misconduct' as alleged by the court, there is zero evidence that the Debtor engaged in any 'odious' behavior in order to <u>obtain the judgment</u> from this court to vacate his Chapter 13 petition, see also *Info-Hold*, 538 F.3d 448 (quoting *Paccar*).

The petition was filed on February 19, 2019 and the motion to dismiss was filed on February 25, 2019 because as stated in a previous filing, the Debtor was concerned about a conflict with a pending case in the Ohio Supreme Court involving the underlying foreclosure. The motion to dismiss was not prompted in reaction to steps taken by any adverse party.

The bankruptcy case had not been converted, and no party had even moved to convert the case. The Debtor followed the law perfectly, and the case was properly dismissed.

Further, in using the singular word 'proceeding' the Sixth Circuit in *Paccar* made clear that any allegation of fraud or misconduct must be limited to the 'relevant legal proceeding'. Setting aside the other flaws discussed above related to the applicability of 60B, the Sixth Circuit correctly highlights that any discussion of 'fraud, misrepresentation or misconduct' must be limited to the case before it and not attempt to review actions and decisions from preceding cases.

Accordingly, the court made a clear error of law when it determined that the Debtor's 'misconduct' warranted vacation of the judgment and consequently, a denial of the motion to stay pending appeal.

**4. Review in This Court of 2017 Assignment of Mortgage and Allonge not Barred**

In its Opinion of December 24, 2019, the court said on page 3:

11

> The court has repeatedly rejected Debtor's position that this
> court has the authority to review the state court proceedings in
> the foreclosure case. Debtor argues that the issue of the validity
> of the mortgage assignment was never fully and fairly litigated
> in state court. His argument relies on estoppel doctrines. The
> court's inability to review the state court action is jurisdictional.
> It simply does not have the authority to make the inquiry Debtor
> seeks.

However the facts in this case, coupled with U.S. Supreme Court law, requires a different outcome that the one provided above.

First, the 2017 Assignment of Mortgage ("AOM").

To hold that the issue of determining the validity of the AOM is barred by estoppel doctrines relies on two documents – Movant's Exhibit C and Movant's Exhibit D – (ECF 24-3 and ECF 24-4, 4/22/19).

Exhibit C is a motion that the Debtor filed in state court after the controlling decisions were made in the underlying foreclosure case in both the trial court and court of appeals.

The entire rationale and basis for the motion (Exh. C), in which the Debtor referenced and included the 2017 AOM as 'newly-discovered' evidence, was that the statements contained within the document proved the fraud upon the court that heretofore were based mostly on allegations. The purpose of the motion was not to determine the validity of the document itself.

The trial court dismissed the motion in one sentence based on res judicata, which is reflected in Exhibit D. As can be seen, there were no 'findings' associated with the trial court's order.

However, the United States Supreme Court in *Lawlor v. National Screen Service Corp.*, 349 U.S. 322 (1955), held:

> It is likewise true that the judgment was unaccompanied by
> findings, and hence did not bind the parties on any issue.

In the case at bar, not only was the issue of the 2017 AOM not fully and fairly litigated in the state courts, but 'findings' of the court were not included in the only instance where the document

was presented, or the contents therein discussed. As such, the Supreme Court's direction in *Lawlor*, supra, means that an independent determination by this court of the validity of the 2017 AOM is permitted and is not barred by estoppel doctrine.

Second, for similar reasons, the same is true of the newly-introduced allonge, which was not introduced in the trial or appellate court, and at no point in the trial court did the movant even allege ownership of the note via an allonge.

As such, there is no case law or statute that the Debtor is aware of, nor that was provided by the court or the movant, to support the court's determination that a review in this court of a document never introduced in the state courts is barred by estoppel doctrine.

The court engaged in a clear error of law when it found otherwise.

## 5. Court Admitted That Movant is Not an Article III Injured Party

While addressing the subject of 'harm to others', on page 5 of its December 24, 2019 Order, the court said:

> According to Debtor, the court was wrong when it concluded that U.S. Bank suffers harm every day because, as trustee, U.S. Bank does not have a financial interest subject to harm. **This ignores the fiduciary duties imposed on U.S. Bank and its obligation to act on behalf of its client. Harm is occurring to another.** Debtor is in possession of the real estate and not making payments. Interest, insurance, property taxes and legal fees increase the amount owed daily. Imposing a stay pending appeal would result in substantial **harm to the mortgagee.**

By stating that 'harm is occurring to another', the court overlooked the fact that a party seeking relief from automatic stay and in rem relief must be the 'injured' party, and not the representative for an injured party.

In *Veal v. American Home Mortgage Servicing, Inc.* 450 B.R. 897 (9th Cir. B.A.P. 2011), which addressed similar issues, the Ninth Circuit B.A.P. said at page 5:

> Even though Wells Fargo and AHMSI may meet the constitutional

13

> minima for standing, this determination does not end the inquiry. They must also show they have standing under various prudential limitations on access to federal courts. Prudential [**16] standing "'embodies judicially self-imposed limits on the exercise of federal jurisdiction.'" *Sprint*, 554 U.S. at 289 (quoting Elk Grove, 542 [*907] U.S. at 11); County of Kern, 581 F.3d at 845.
>
> In this case, one component of prudential standing is particularly applicable. <u>It is the doctrine that a plaintiff must assert its own legal rights and may not assert the legal rights of others.</u> *Sprint*, 554 U.S. at 289; *Warth*, 422 U.S. at 499; *Oregon v. Legal Servs. Corp.*, 552 F.3d 965, 971 (9th Cir. 2009). (underline emphasis added).

And even though the Debtor's note has been reduced to judgment, the same principles apply as it relates to proof of ownership of the judgment in this court (or ownership of the note and mortgage). Further from *Veal* at page 13:

> In addition, even if admissible, the final purported assignment of the Mortgage was insufficient under Article 9 to support a conclusion that Wells Fargo holds any interest, [*918] ownership or otherwise, in the Note. Put another way, without any evidence tending to show it was a "person entitled to enforce" the Note, or that it has an interest in the Note, Wells Fargo has shown no right to enforce the Mortgage securing the Note. Without these rights, Wells Fargo cannot make the threshold showing of a colorable claim to the Property that would give it prudential standing to seek stay relief or to qualify as a real party in interest.
>
> Accordingly, the [**51] bankruptcy court erred when it granted Wells Fargo's motion for relief from stay, and we must reverse that ruling.

Further, this court goes on to allege that "Imposing a stay pending appeal would result in substantial harm to the mortgagee", but there is nothing in the record to prove who that alleged mortgagee is and what 'substantial harm', if any, will occur to him. On top of that, even if there is a valid mortgagee still in this case 15 years later, that mortgagee is not before this court and has not submitted a proof of claim.

On the other hand, several other alleged creditors have raised their hands as part of the Debtors petition, but the court is putting the interest of an unidentified and invisible alleged creditor before those interests.

14

Absent a stay pending appeal, Debtor will certainly lose his home as the result of the upcoming Sheriff's sale. That in turn will create a significant defiency judgment against the Debtor, which in turn will likely lead to a conversion of the Chapter 13 to a Chapter 7.

That development will wipe out any possible claims the actual, identified creditors have in the Debtors estate.

Because the court has admitted that U.S. Bank is acting on behalf of another party and not asserting its own interest, the court errored when it ignored established Article III requirements and denied the stay because 'harm is occurring to others'.

## 6. Irreparable Harm to Debtor is Clear

The court makes several impermissible assumptions and seems confused about the facts of the case, and the intentions of the Debtor:

**A.** The court said at page 4 that the Debtors 'admitted end game is to circumvent the underlying mortgage obligation', but that sentiment ignores the reality that every Debtor should – and in fact is required by the terms of their warranty deed – to 'defend against all claims whatsoever except as provided herein'. That line appears in the Debtors warranty deed and likely in every deed. The Debtor is rightfully seeking to determine if the relief requested by the Movant, and the claim it implies, is allowed by law, which is an act the Debtor is literally required to undertake.

**B.** The court continues to state that the Debtor is wrongly asserting that no one has the 'right to pursue the foreclosure action or collect on the debt'. But the Debtor has said the opposite based on the findings of the state courts. The Debtor admits that the movant has been granted those rights per law of the case <u>in state court</u>. But as discussed above in *Veal*, those same rights do not automatically transfer and apply to an Article III court. The fact that the court seems to view the Debtors actions as simply a stall tactic to put off the inevitable

15

fails to account for the reality of the situation. If that is the result of following the law, then this court should follow the law even if the end result is that the movant makes another attempt to collect its alleged debt five years from now.

**C.** The court also falsely asserts that the Debtor has come into the court with 'unclean hands' while utterly ignoring the blaring signs that the movant has filed prima facie fraudulent documents and made prima facie false statements on required court filings in this very court. Taking every step possible to defend against those false statements and false documents is not congruent with 'unclean hands'.

What else should the Debtor do when faced with an adversary who is not telling the truth and is attempting to literally steal a family's home? The Debtor actually did file a police report with the Youngstown Police Department last year but was told to 'take up the matter in court'. But in court, trying to do just that, the Debtor is accused of having 'unclean hands' while the criminal gets off 'scot-free'.

**D.** The Debtor is aware that had the case remained dismissed, or if its dismissed anew, the automatic stay expires. But again, the Debtor is simply trying to follow the process and the law and is asking the court to do the same.

If the Order vacating the stay is reversed, the process renews and we all go from that point forward. But to deny the stay based on the notion that the Debtor would not have had one anyway is contrary to law and common sense.

All that matters today is that, as previously stated, but for the improper actions of this court, the Debtor would be able to stop the upcoming sale and enter into a proper Chapter 13 case because the Debtor does not believe that either the movant, or the original plaintiff in the underlying case, have a valid claim against his property. Absent a valid claim against the property, the Debtor has sufficient income to pay 100% of the remaining unsecured debt.

16

The Debtor is unaware of any law or statute that prevents such a result. In fact, the opposite is true. The first and foremost responsibility of the bankruptcy court is to figure out 'who owes who what'. Once that is fairly and legally established, the chips fall where they may.

The fact that the Debtor has admitted that the movant has the right in state court to foreclose does not forfeit the Debtors right to object in this court to the relief requested by the movant. They are two separate court systems, with two very different standards.

The court errored when it concluded that the Debtor will not be irreparably harmed if the stay is lifted.

7.  **Due Process Not Afforded to Debtor**

At page 3 of its December 24, 2019 Order denying the stay, the court said:

> US Bank's nonparticipation does not alleviate Debtor's
> burden of proof or persuasion for the relief he seeks.

However, in *In Re Wells*, 407 B.R. 873 (Bankr. N.D. Ohio 2009) this same court in 2009 while discussing requirements for a proof of claim (in which the court said 'the applicable law is, however, is the same in both contexts' as a motion for relief from stay):

> 11 U.S.C. § 502(b)(1). Bankruptcy rule 3001 governs
> proofs of claim and requires that a claim based on a writing
> and/or a security interest in the debtor's property must
> include a copy of the writing and evidence of perfection. FED.
> R. BANKR.P. 3001(c), (d). Read together, § 502(a) and
> bankruptcy rule 3001(f) provide that "[o]n objection, a proof
> of claim filed in accordance with the rules is prima facie
> evidence that the claim is valid and in the amount stated."
> *In re Parrish*, 326 B.R. 708, 719 (Bankr.N.D.Ohio 2005).
>
> "[W]here the proof of claim does not adhere to the requirements
> of Rule 3001 by providing the facts and documents necessary
> to support the claim, it is not entitled to the presumption of prima
> facie validity." *In re Kincaid*, 388 B.R. 610, 614 (Bankr. E.D.Pa.
> 2008) (citations omitted); FED. R. BANKR.P. 3001(f); see also
> *In re Dumontier*, 389 B.R. 890, 898 (Bankr.D.Mont.2008);
> *Parrish*, 326 B.R. at 719.

> When a claim is not prima facie valid, the debtor need only
> object to the claim based on applicable rules or statutes to place
> the burden of proof back on the claimant. *Raleigh v. Illinois
> Dep't of Revenue*, 530 U.S. 15, 20-21, 120 S. Ct. 1951, 147 L.
> Ed. 2d 13 (2000); *eCast Settlement Corp. v. Tran (In re Tran)*,
> 369 B.R. 312, 318 (S.D.Tex.2007). Even if the creditor responds
> to a debtor's objection, the creditor carries the "burden of going
> forward as well as the ultimate burden of proof to establish its
> claim at the hearing on the substantive objection." *Burkett*, 329
> B.R. at 830. And, a creditor's lack of adequate response to a debtor's formal or
> informal inquiries 'in itself may raise an evidentiary basis
> to object to the unsupported aspects of the claim, or even a basis for
> evidentiary sanctions, thereby coming within Section 502(b)'s
> grounds to disallow the claim.'

In the case at bar, the Debtor filed an extensive and well-documented objection to the movant's motion for relief from stay and in rem relief, the functional equivalent of a rule 3001 filing, *Id.* (ECF 49 - 7/25/19) In response, the movant filed a one sentence objection that failed entirely to address the multiple deficiencies in the request for relief from stay and in rem relief raised by the Movant (ECF 59 – 8/13/19).

The simple 'objection' by the movant failed to 'establish its claim at the hearing on the substantive objection', *Wells*, supra.

Given that failure, the court should have held an evidentiary hearing into the validity of the 2017 AOM, the allonge, and the overall pecuniary and prudential standing issues raised by the Debtor, but chose not to, *id.* Failing to hold an evidentiary hearing violated the Debtors due process rights. Here's how the Fourth Circuit Court of Appeals addressed the issue:

> This Court consistently has held that some form of hearing
> is required before an individual is finally deprived of a property
> interest. *Wolff v. McDonnell*, 418 U.S. 539, 557-558 (1974).
> See, e. g., *Phillips v. Commissioner*, 283 U.S. 589, 596-597
> (1931). See also *Dent v. West Virginia*, 129 U.S. 114, 124-125
> (1889). The "right to be heard before being condemned to
> suffer grievous loss of any kind, even though it may not involve
> the stigma and hardships of a criminal conviction, is a principle
> basic to our society." *Joint Anti-Fascist Comm. v. McGrath*,
> 341 U.S. 123, 168 (1951) (Frankfurter, J., concurring). The

18

> fundamental requirement of due process is the opportunity to be heard "at a meaningful time and in a meaningful manner." *Armstrong v. Manzo*, 380 U.S. 545, 552 (1965). See *Grannis v. Ordean*, 234 U.S. 385, 394 (1914).

In the case at bar, not only did the court deny an evidentiary hearing, but the hearings that were held hardly qualified as being conducted in a 'meaningful manner'.

Instead, it appeared the court had already made up its mind and the 'hearings' were an exercise to 'check the box' on the way to the Sheriff's sale.

As such, the court errored when it concluded that the Debtor's due process rights were not violated.

## 8. Abuse of the Bankruptcy Process is a Public Concern

Despite what the court has to date held, the real villain in this case is the movant, and if the facts and evidence are viewed fairly, its impossible to come to any other conclusion.

When faced with similar trickery by the same movant in *Wells*, this court reacted to the abuse of the bankruptcy system with this order:

> U.S. Bank failed to show that it had standing to file claim 1, and also failed to show at the hearing that it is entitled to enforce the note and mortgage. Claim 1 is, therefore, disallowed under 11 U.S.C. § 502(b)(1). The court will issue a separate show cause order on U.S. Bank regarding its factual and legal bases for filing claim 1.

Once the instant case is viewed through an impartial lens, there is no reason that this court should not issue the same show cause order to the movant as this very court did in 2009. The bankruptcy system should be protected from unscrupulous and dishonest actors and the evidence shows that's what U.S. Bank still is today.

## 9. Denying Stay Pending Appeal Creates 'Manifest Injustice'

Given the above, it is clear that a stay should issue to allow time for the appeal(s) to run. The party requesting relief from stay and in rem relief is not an injured party. No one knows who is, and

19

the Movant has been misrepresenting its role in both the state courts and in this court for the past 3.5 years. By allowing the Debtor's home to be sold under those circumstances creates a 'manifest injustice' and the process should be stopped immediately while the issues are sorted out. Further, to allow legitimate creditors to suffer in favor of an illegitimate pretender also creates additional 'manifest injustice'.

## CONCLUSION

For the reasons contained herein, the Debtor prays that this Court alters or amends it judgment of December 24, 2019 and **GRANTS** the Debtors motion for stay pending appeal, and for any other relief as appropriate.

Respectfully submitted,

Ronald J Smith, *Pro Se*
1625 Gully Top Lane
Canfield, OH 44406
Ronald1625@hotmail.com
330-207-0705

### Certificate of Service

I certify that a copy of the foregoing was served by First Class U.S. Mail on January 7, 2019 upon:

Stephen R. Franks (0075345)
Manley Deas Kochalski LLC
P.O. Box 165028
Columbus, OH 43216-5028
614-220-5611
Attorney for Movant

Michael A. Gallo
5048 Belmont Avenue
Youngstown, OH 44505

Ronald J. Smith
Pro se

20